THE TOWN OF SOUTH CHARLESTON

*v.*

THE BOARD OF EDUCATION OF THE COUNTY OF KANAWHA

(No. 10032)

Submitted September 29, 1948. Decided

November 30, 1948.

*Campbell, McClintic & James, Charles C. Wise,* and *Stanley E. Dadisman,* for appellant.

*Bowers & Meador, H. W. Bowers, P. G. Meador,* and *H. William Bowers, Jr.,* for appellee.

LOVINS, JUDGE:

The Town of South Charleston, a municipal corporation, hereinafter referred to as "town", instituted this suit in the Circuit Court of Kanawha County against The Board of Education of the County of Kanawha, hereinafter referred to as "board". The trial court rendered a decree adverse to the defendant, from which an appeal was granted by this Court.

This suit arises out of the last of a series of transactions between the town and the board, relative to a cooperative policy of establishing a joint system of public recreation facilities.

In the years 1936 and 1938, the board purchased certain lands in the Town of South Charleston at an aggregate cost of $20,673.00 The lands were conveyed by the board to the town for a nominal consideration, and thereafter the town constructed thereon a stadium, athletic field, and gymnasium, using, in part, funds allocated by

the Federal Government for these purposes. Pursuant to an understanding or agreement, the town then executed and delivered leases demising the lands to the board for ninety-nine years, with the privilege of renewal for two terms of ninety-nine years each. Included in one of the leases, dated in 1938, is the easterly seven feet of one lot designated as Lot No. 11, Block E-3. The validity of those conveyances and leases is not directly questioned in this proceeding.

This proceeding concerns a parcel of land, consisting of Lots Nos. 9 and 10, the westerly five feet of Lot No. 8 and the easterly seven feet of Lot No. 11, Block E-3. Lots Nos. 9 and 10, and the westerly five feet of Lot No. 8 were acquired by the board in January, 1941, at an additional cost of $1,566.50. The board conveyed Lots Nos. 9 and 10 and the westerly five feet of Lot No. 8 to the town by deed bearing date the 10th day of June, 1941, in consideration of one dollar, other valuable considerations, and the further consideration that the town would execute and deliver to the board the lease hereinafter discussed.

By agreement bearing date October 10, 1941, the town, in consideration of the conveyance of Lots Nos. 9 and 10, and the fractional part of Lot No. 8, and the relinquishment of rights as lessee of the easterly seven feet of Lot No. 11, agreed that, upon request, it would convey to the United States of America the two lots and the two fractional parts of lots; that it would use its best efforts to obtain the erection of a recreation building and other improvements on said land; and that in the event the said lands were not conveyed to the United States of America that the town would execute and deliver an apt lease in "language identical with or substantially the same as the lease hereto attached." It was further agreed between the town and the board that, in the event said lands should be conveyed to the United States of America, and if the United States of America should reconvey said lands to the town "or to any person, firm or corporation, public or private, designated by" the town,

the town, or the grantee so designated by it, would forthwith execute and deliver to the board a lease for a term of ninety-nine years in accordance with the terms of the lease, copy of which was attached to the agreement, and that the conveyance of the lands to the town by the board would constitute full consideration for the lease to be executed by the town for the term of ninety-nine years. The proposed lease was drawn so that the two lots and the two fractional parts of lots were leased and demised to the board for a term of ninety-nine years, with the right of renewals for two additional terms of ninety-nine years each.

The United States of America instituted a condemnation proceeding in the District Court of the United States for the Southern District of West Virginia, in which the town, the board, and the Sheriff of Kanawha County were made defendants. In the condemnation proceeding it was adjudged by said Court that the title to the lands involved herein was vested in the United States of America, subject to existing easements, which are of no concern in the suit at bar. On January 29, 1942, the district court further adjudged that one dollar, found by the commissioners theretofore appointed, would be just compensation for the lands taken, and permitted the attorneys for the board and town to make as a part of the record, a statement setting forth, in substance, the facts hereinabove detailed.

The district court provided in the order last mentioned that "* * * the Court finds that neither said statement, nor any of the facts therein stated, have any effect upon the title of the United States of America to said real estate, nor constitute any lien or encumbrance thereon."

Thereafter the United States of America erected a recreation building on said lands.

Prior to the 20th day of September, 1946, the town, through its mayor, offered to purchase from the United

States of America the lands theretofore acquired in the condemnation proceeding, and the building erected thereon, for the sum of eighteen thousand dollars. Such offer to purchase was made subject to the authorization by the voters of the town of a bond issue to be submitted at the general election to be held on November 5, 1946. On September 20, 1946, the United States accepted the offer, subject to said condition.

After the bond issue election had been called and published, but before the election, the mayor of the town, whose predecessor had signed the agreement of October 10, 1941, first became apprised of the existence of such agreement. The mayor advised the town council of the agreement and, after some consultation, it was decided to publish a statement showing the existence of the agreement to lease the lands intended to be acquired by the proceeds of the bond issue. The bond issue was approved by the voters, and thereafter the board was requested by the mayor to release the town from the agreement to lease the lands. The board declined to do so, and thereupon the town, taking the position that it would be an unlawful diversion of the proceeds of the sale of the bonds to pay for the land, subject to the agreement to lease, instituted this suit.

The bill of complaint alleges the facts herein stated, and prays for coercive relief or, in the alternative, that it be granted declaratory relief.

The court assumed jurisdiction of the cause under the Uniform Declaratory Judgments Act, and on May 23, 1947, decreed that the agreement made on October 10, 1941, and the deed of conveyance, dated June 10, 1941, be set aside, and held for naught as being void.

On the 9th day of December, 1947, the board filed a petition in the nature of a bill of review, setting up certain errors allegedly committed by the trial court in the first decree. A demurrer to said petition was filed by the

town, which demurrer having been sustained by the trial court, a decree was entered on December 19, 1947, dismissing the petition in the nature of a bill of review, and ordering that this cause be dismissed from the trial docket of the court.

In our opinion, only one decisive question is presented: Did the trial court have jurisdiction of the cause to grant either coercive relief or declaratory relief?

The purpose of this suit is to avoid the agreement of October 10, 1941, between the town and the board to lease the lands mentioned above. The owner of the land, being the United States Government, was not before the court, and hence the agreement between the town and board to lease the land by its provisions was ineffective until the land was reconveyed to the town. Therefore, the only way in which the court could have jurisdiction was under the provisions of Chapter 26, Acts of the Legislature, 1941, being the Uniform Declaratory Judgments Act, and hereinafter referred to as the "act".

A preliminary question relates to the prayer for alternative relief. In applying the provisions of the act in the case of *West Virginia-Pittsburgh Coal Co. v. Strong*, 129 W. Va. 832, 42 S. E. 2d 46, this Court considered a bill of complaint praying, conjunctively, for declaratory and coercive relief. We held that the bill, on demurrer, would have been defective because of combining a prayer for the two kinds of relief. In this proceeding the bill prays, disjunctively, for coercive or declaratory relief. An alternative prayer for coercive or declaratory relief is not a ground for objection. Borchard Declaratory Judgments, 2d ed. p. 430; Declaratory Judgments, Anderson, Section 96. And it depends upon the facts pleaded whether coercive or declaratory relief should be granted. Declaratory Judgments, Anderson, Section 97. Notwithstanding such authorities to the contrary, it is our opinion that suits, actions and proceedings for coercive relief should not be combined with a proceeding to

obtain declaratory relief, and we do not regard with favor a pleading praying for the two kinds of relief in the alternative. This view is consonant with the rule implementing the act, adopted by this Court on April 1, 1947, wherein the distinction between law and equity, in a measure, is abolished, and detailed procedure is provided to obtain relief under the act. 128 W. Va., xv.

This record raises the question whether a justiciable controversy exists, or whether the town and board are merely seeking an advisory opinion on a nonexistent controvesy. The courts of this State have no jurisdiction under the act, if no justiciable controversy exists between the parties to the proceeding. *Crank v. McLaughlin,* 125 W. Va. 126, 23 S.E. 2d 56; *Mainella v. Trustees,* 126 W.Va. 183, 27 S.E. 2d 486; *Dolan v. Hardman,* 126 W.Va. 480, 29 S.E. 2d 8. See 16 Am. Jur., Declaratory Judgments, Section 9. The act does not in express terms require the existence of a justiciable controversy; nevertheless, such controversy must exist before a court can acquire jurisdiction. *Joseph v. Bank,* 124 W.Va. 500, 21 S. E. 2d 141. "Courts are not constituted for the purpose of making advisory decrees or resolving academic disputes. The pleadings and evidence must present a claim of legal right asserted by one party and denied by the other before jurisdiction of a suit may be taken." *Mainella v. Trustees, supra.*

We do not deem it necessary to define the term "justiciable controversy", as the rule relative thereto depends on the facts of each case. But it is clear that none can exist where the subject matter thereof is not before the court. See *Post v. Metropolitan Casualty Ins. Co.,* 237 N.Y.S. 64; 68 A.L.R. 117.

But the United States Government is the owner of the land here involved, and it was not, and could not have been, made a party to this suit without its consent.

Thus, a declaration of the rights of the parties under the conveyance and agreement to lease the land would be ineffective, unenforceable and could serve no purpose.

Moreover, a declaration of rights will not be based on a future contingency. *Washington-Detroit Theater Co. v. Moore,* (Mich.), 229 N.W. 618. Although the Michigan statute under which that case was decided required an "actual controversy", we deem the reasoning therein sound as applied to the phrase "justiciable controversy". Cf. *Kern v. Newton,* (Kan.), 100 P. 2d 709, wherein the court soundly reasons that a future contingency affords no ground for relief. See 12 A.L.R. 69, *et seq.*; 50 A.L.R. 47, *et seq;* 68 A.L.R. 118, *et seq;* 87 A.L.R. 1215, *et seq.*

The agreement between the town and the board clearly is inapplicable and ineffective so long as the lands are not reconveyed to the town or a designated grantee, and the effectiveness of the agreement to lease depends upon whether the United States Government reconveys said lands to the town. That event has not occurred. It may not occur. Hence, the rights of either the town or the board concerning the land depend solely upon a future, contingent event. The rights, status and legal relations of parties to a proceeding under the act depend upon the facts existing at the time the proceeding is commenced.

It is true that the town has made a conditional offer to purchase the lands from the United States Government, and that such offer has been accepted. But a reconveyance of the land is a future and contingent event. No justiciable controversy is presented by the pleadings and proof herein and hence the trial court was without jurisdiction to pronounce any decree, except one of dismissal.

It may be argued that the proceeds of the bonds which have heretofore been authorized by the voters to be issued cannot be applied to the purchase of the land by reason of the agreement between the town and board to make a lease, and that such doubt gives rise to a present, existing and

justiciable controversy. We do not think so. A speedy and efficient method of testing the validity of a bond issue is provided by statute. Code, 13-1-25, 26.

In accordance with the foregoing, the decree of the Circuit Court of Kanawha County is reversed, and this proceeding is dismissed at the cost of the plaintiff.

*Reversed and dismissed.*