STATE *ex rel.* HENRY HINTON FAVORS

*v.*

E. H. TUCKER, *Warden, West Virginia Penitentiary, Successor to* IRA M. COINER, *Warden*

(No. 10905)

Submitted September 4, 1957. Decided November 19, 1957.

*George W. Stokes,* for relator.

*W. W. Barron,* Attorney General, *Fred H. Caplan,* Assistant Attorney General, for respondent.

DUCKER, JUDGE:

The relator, Henry Hinton Favors, filed his petition, under the original jurisdiction of this Court, for a writ of habeas corpus ad subjiciendum against Ira M. Coiner, Warden of the West Virginia Penitentiary, now against E. H. Tucker, as Successor Warden, alleging that he had been illegally tried and convicted in September, 1953, in the Intermediate Court of Kanawha County for the crime of robbery by force and violence of one Frank Alesci and Tony Franklin in Charleston, West Virginia, on August 16, 1953, and sentenced on October 28, 1953 to serve twenty-five years in the state penitentiary. On March 5, 1956, this Court denied the writ, and on April 29, 1957, upon relator's petition for a writ of certiorari granted by the Supreme Court of the United States, that Court, as agreed to by the Attorney General of West Virginia, remanded this case to this Court for the purpose of determining the truth of the allegations contained in relator's petition for a writ of habeas corpus, whereupon, this Court, on June 7, 1957, awarded a writ of habeas corpus, returnable to June 18, 1957, and continued the same until September 4, 1957 for the taking in the meantime of testimony for submission of the case for decision on depositions so taken and on briefs and oral argument of counsel.

The substantial allegations of the relator's petition are: (1) that his present sentence is invalid because, contrary to the West Virginia and United States Constitutions, in effect he was convicted without counsel in that the court appointed and relator was represented by the same counsel as was appointed to and did represent the co-defendant who had entered a plea of guilty of the same crime with which he and such co-defendant were indicted, and such representation by the same counsel was inconsistent with proper representation of relator, and that by reason of such inconsistent representation, the court lost jurisdiction of the case, and (2) that the court should have "scratched from the records" the false testimony of George Head, Jr., who was also

indicted for the same robbery, and who had previously pleaded guilty, and who changed his testimony during the trial of the relator from first saying that relator was not with him to later saying that relator was with him at the time of the robbery for which both relator and Head were indicted. Relator also complains of the fact that George Head, Jr. was sentenced to only ten years imprisonment on his plea of guilty but relator received a twenty-five year sentence, and that relator was arrested without a warrant, but these points are not seriously relied on by relator, and cannot, we think, be considered as having any substance or as being worthy of serious consideration here.

By order of this Court, George W. Stokes, of South Charleston, West Virginia, a member of the Bar of this Court, was appointed to represent the relator in this proceeding, and pursuant to the issuance of the writ, did so represent him in the taking of depositions and in briefs and oral argument for the submission of the same on the return day of the writ as continued.

In addition to the evidence taken at the trial of relator in the Intermediate Court of Kanawha County, a transcript of which was by stipulation of counsel made a part of the record in this proceeding, the testimony of the several witnesses with knowledge of the facts alleged in the petition of the relator was duly taken and the transcript thereof filed in this Court for the determination of the issues raised, and from the evidence the following facts appear:

In the Intermediate Court of Kanawha County, at its September, 1953, Term, at which the relator, Henry Hinton Favors and one George Head, Jr. were indicted jointly for the crime of robbery, the court appointed William L. Lonesome, an attorney, to represent both defendants. Prior to the trial of the relator, the defendant, George Head, Jr. pleaded guilty, and while awaiting sentence, the relator, having pleaded not guilty, was found guilty and sentenced to confinement for twenty-five years in the West Virginia Penitentiary. The facts

that the same attorney was appointed to defend both defendants and that relator's co-defendant had pleaded guilty, a situation which relator now claims rendered such counsel's services inconsistent and conflicting with the right of relator to have effective assistance and representation by counsel in his defense, are the principal bases upon which relator relies in support of his petition herein. In order to apply the legal principles involved in this case, it is necessary to review and to some extent summarize the evidence before us.

The relator, Henry Hinton Favors, testified in the main as follows:  that he requested the Trial Judge, William J. Thompson, to appoint Attorney J. Raymond Gordon to defend him, that William L. Lonesome "didn't have interest in my case, he thought I was guilty and J. Raymond Gordon was interested"; that "Mr. Lonesome had yet to get ten years for George Head, Jr., and therefore he had to get me more time in order to get George Head, Jr. a ten year sentence"; that "William L. Lonesome won't help me, he wants me to plead guilty to a crime I don't know nothing about"; that no other counsel was given him; that George Head, Jr. testified that relator was not with him on the night of August 17th when he robbed the Strand Shoe Shop at 606 Court Street, Charleston, and that after Head so testified, the prosecutor asked for a fifteen minute recess; that conversations took place between the prosecutor, the judge, and the police officers and George Head, Jr., but relator did not overhear the conversations; that George Head, Jr. had told him he signed some blank papers, that Head hadn't told him that he (Head) had told police that relator was involved in the crime with him; that Attorney Lonesome told him to plead guilty, that relator had a record and would probably get life; that Attorney Lonesome should have objected to the recess and should have cross-examined Head more than he did; that relator didn't talk to Head about the trial except that Head said he (Head) hadn't done anything and then on October 23rd Head pleaded guilty; that Lonesome told Head "I can get you probation because you don't have a bad

record, and he told me I can't get you lower than 10 years".

George Head, Jr. testified in substance as follows: that he was sentenced to ten years imprisonment after relator was sentenced; that his counsel, Lonesome, told him to plead guilty, that Lonesome would get his sentence as light as he could; that he signed a piece of paper as to what he said about the robbery but he didn't know what he was doing; that he was "kind of scared", and "I was going to try to get off as light as I could"; that Sergeant Fisher said if he would be truthful it would go easier on him, and that he would get life out of it if he didn't tell the truth; that he and relator had not discussed at any time before the trial statement made by him to police; that on direct examination he refused or failed to identify relator as being at the scene of the crime; that a recess in the trial of relator was taken and the prosecutor, Sergeant Fisher and another person took him back "in the little room", and Sergeant Fisher told him he would "get life about lying in the courtroom"; that he was lying when he told the court and jury that relator was with him at the scene of the crime; that he had told Attorney Lonesome that he was guilty and had robbed the victims and that it was after that that Attorney Lonesome advised him to plead guilty; that it wasn't a blank piece of paper that he signed; that as to his education he had been in the ninth grade of school but that he couldn't read; that he wasn't scared of the prosecution, wasn't harmed in any way, was not threatened and wasn't forced to sign the statement; that the prosecutor threatened him "with life if he didn't go out there and tell the truth"; that they told him to "get on the stand and tell just what happened"; and that he and relator talked to each other in the jail cell about what defense he would "take" in this case.

Herbert W. Bryan, assistant prosecuting attorney of Kanawha County, who conducted the prosecution of the robbery charge against the relator, testified to the following effect: that he didn't recall talking to relator

before the latter's trial; that at the trial he asked George Head, Jr. if he knew relator, to which Head replied that he did but that relator was not with him at the time of the crime and that he, Bryan, showed him the statement with Head's signature on it, which signature Head admitted to be his, and that he, Bryan, asked Head to read the statement, and then he, Bryan, asked for a short recess; that he did not take or have Head brought into his office, but that when the recess was granted, he told Head "to make up his mind what the truth was, whether the statement that he had given the police was true or not true"; that relator could talk to his counsel or anyone else, and that he, Bryan, did not want to talk to him, turned and left Head in the court room; that during the recess and in the hallway while just passing the time with several people, some police officers called his (Bryan's) attention to the fact that Head was there and that he, Bryan, asked Head if the statement he had made to the police was true and Head said it was; that he, Bryan, made it clear to Head that it did not make any difference to Bryan what his (Head's) testimony was as long as it was the truth; that no threat of life sentence or any promise was made to Head; that he didn't recall any request by relator for separate counsel; that relator never made any expression to him that he was not satisfied with William Lonesome as counsel; that the reputation of William Lonesome as an attorney is excellent and that he is a thoroughly competent and honorable man and attorney; that it is true that the testimony of George Head, Jr. as to whether or not relator was at the scene of the crime could mean a difference between a conviction and an acquittal; and that he asked for a recess to give Head an opportunity to decide what the truth was and what his testimony was going to be and that such procedure was normal when taken by surprise.

The Judge of the trial court, in affidavit form submitted by stipulation, stated that the relator in person or by counsel did not request the court prior to or during the trial of his case to allow his attorney, William Lonesome,

to withdraw from his case on the grounds that there was a conflict of interest between the relator and the co-defendant, George Head, Jr., and that the court did not refuse any such request or petition.

William F. Hammack testified substantially as follows: that he is a police officer in the detective bureau of the City of Charleston and was present at the trial of the relator; that during a recess taken in the trial of the relator, Head was called off of the stand by him and Patrolman Emmett Thompson into the hallway between the court room and the prosecutor's office; that the prosecutor did not talk to Head except in their presence after Head agreed to go back on the stand and testify as to the truth in the matter, and that Head stated that the statement he had given the police was true; that he did not make or hear any threats made to Head during the recess; that Head "was given no promises or anything else"; that he had not taken the statement from Head but that Sergeant Fisher and Emmett Thompson took the statement; that Patrolman Emmett Thompson was talking to Head first in the hallway and attempting to get Head to tell the truth about the matter and that he, Hammack, told Head that he, Head, had made the statement and that he, Head, "was storying about the matter on the stand", and that Head then agreed to go back on the stand and tell the truth about this case; that officer Emmett Thompson has died since the date of this trial; that the prosecuting attorney told Head he could expect no favors and could expect no help from the office of the prosecuting attorney or anyone else for telling the truth in this matter.

In the evidence offered at the relator's trial of which he complains, a pertinent part of Head's testimony is as follows:

"Q. Did you and the defendant, Henry Favors, discuss going out and robbing these two fellows?

A. There was another guy with us.

Q. What was his name?

A. John Smith.

Q. Where did you meet John Smith?

A. I met him up in the District of Columbia when I was in the Army.

Q. How long had you known John?

A. About six or seven months.

Q. John Smith and Henry Favors were with you when you were there?

A. No, sir, Henry wasn't with me.

Q. Didn't you talk to me over here this morning?

A. Yes, sir.

Q. And didn't you tell me that this man, Henry Favors was with you?

A. Yes, but I didn't know; I was scared.

Q. Who were you scared of?

A. I don't know, sir.

Q. You do not know what you were scared of and you gave the police a statement, didn't you, George?

A. Yes, sir.

Q. You told the truth then, didn't you?

A. No, sir, I didn't tell the truth.

Q. You did not tell them the truth?

A. No, sir.

\* \* \* \* \*"

A short recess was then taken after which the examination was resumed, as follows:

"Q. George, did Henry Favors go with you that night to rob Frank Alesci and Tony Franklin?

A. Yes, sir.

Q. That was at the shoe shop out here on the corner of Court Street and North Rand Street?

A. Yes, sir.

Q. George, I will ask you if this is your signature here?

A. Yes, sir.

Q. Did you make a statement without saying what the statement is, to the police about what occurred at Frank Alesci's place?

A. In August of this year.

Q. When you and this defendant were out and robbed Tony and Frank?

A. Yes, sir."

It seems significant that the relator has not called as witnesses to sustain his allegations, the attorney, William L. Lonesome, who by appointment of the court, represented him at the trial, although a letter from Lonesome as to uncontradicted facts is an exhibit with the petition, or J. Raymond Gordon, whom he said he wanted appointed in the place of William L. Lonesome. While relator could have assumed from the other evidence, particularly that of Herbert W. Bryan, that their testimony would not have supported relator's contentions, certainly the absence of any depositions or other testimony of Attorney Lonesome can be reasonably taken to mean that relator could not prove by him that relator asked for other counsel and that such request was denied, or that Lonesome knew the written statement of Head was false, or that Lonesome saw or was in any way conscious of any conflict in the interests of the relator and Head. It is not unreasonable to believe that Lonesome knew both relator and Head were guilty, and consequently, gave both of them the best advice he could, and that relator, failing to heed such advice, went to trial in the hope that Head would deny that relator was with him at the scene of the crime. The evidence, we think, shows that Lonesome conducted a good defense of the relator.

As this case has been remanded to this Court for a hearing to determine the truth of the allegations made in the petition for a writ of habeas corpus filed herein because, as specified in the mandate, there must not have been a deprivation of constitutional rights as are given by the Constitution according to the decision in the case of *Mooney* v. *Holohan,* 294 U. S. 103, or as might otherwise appear in the hearing before this Court.

The *Mooney* case, *supra,* holds that before the Supreme Court of the United States is asked to issue a writ of habeas corpus in the case of a person held under a state commitment, recourse should be had to whatever judicial remedy afforded by the state may still remain open, and that a criminal conviction procured by the state prosecuting authorities solely by the use of perjured testimony known by them to be perjured and knowingly used by them in order to procure the conviction, is without due process of law and in violation of the Fourteenth Amendment of the Constitution of the United States.

The evidence introduced on behalf of relator does not prove relator's claim that the prosecuting authorities procured his conviction by the use of perjured testimony or that such authorities knew that testimony against relator given by Head was false or perjured. The testimony of the prosecuting authorities that they sought only the truth is, we believe, more credible than that of the unsupported statements of the relator and his accomplice in the crime. Unless the relator or Head had revealed to their counsel that they were both guilty, then so far as the record discloses no one other than relator and Head could have known how true or false was the testimony of Head. It is not unreasonable to attribute the element of truthfulness to the statement Head gave to the police rather than to his subsequent first statement made at the trial. The fact that the prosecutor asked for a recess when taken by surprise is not enough to prove anything wrong; nor is any insistence by the prosecuting authorities that the witness tell the truth. We are of the opinion that the relator has failed to sustain his claim on this point.

We come now to the contention of relator that the court lost jurisdiction because the court appointed one counsel to represent two co-defendants of unlike pleas, the plea of one being guilty and the plea of the other being not guilty requiring trial.

Under Section 14 of Article III of the Constitution of West Virginia which provides that a person accused of a crime "shall have the assistance of counsel", and under the Sixth Amendment to the Constitution of the United States, which likewise provides that such a person shall "have the assistance of counsel for his defense", the relator was entitled to have the assistance of counsel, and under both Constitutions no person shall be deprived of his life, liberty or property without due process of law. According to numerous decisions, including that of this Court in *State* v. *Eno*, 135 W. Va. 473, 63 S. E. 2d 845, this right has been held to mean effective assistance, and that such right cannot be abrogated by denying counsel, if timely employed, sufficient time to adequately prepare for trial. Furthermore, as was held in *Glasser* v. *United States*, 315 U. S. 60, 62 S. Ct. 457, there should be no conflict of interests between defendants whom counsel represent. Otherwise, we see no positive inhibition against co-defendants being represented by the same counsel. And so we must determine whether there is merit in the relator's contention that he should have had separate counsel because of a conflict of interest between his defense and that of Head. Although the petition of the relator could well be dismissed because of its failure to allege facts in support of his contentions, we will decide the question presented on the facts rather than on conclusions of relator as to the same.

The two defendants were arrested on August 18th, 1953, and indicted at the September, 1953, Term of the Intermediate Court, and the co-defendant, Head, made his written statement to the police on August 18th, 1953, admitting that he had committed the robbery in question and that relator was his accomplice in the crime. It

was after the statement of confession was made by Head that, apparently according to Head, pursuant to advice and knowledge of counsel, Head entered a plea of guilty before relator was tried on his plea of not guilty. The record shows that relator's counsel did extensively examine and cross-examine the witnesses upon the trial of the relator. The appointment of the same counsel to represent co-defendants is not in itself improper, and any impropriety or illegality in such appointment must appear from the circumstances or facts in the particular case. It is conceivable that such an appointment might prove the more beneficial to each defendant than if the defendants had been given separate counsel.

Without further recital of the facts as disclosed by the evidence, we think that the facts do not here disclose any real conflict of interest, but do show that the relator was afforded competent and effective assistance of counsel in his defense, that the pleas and proceedings as to Head and relator were entirely separate, were proper, and produced no such conflict as to prohibit Attorney Lonesome from properly and effectively assisting and representing the relator in the latter's defense, and the Court, having had jurisdiction, did not lose it.

The conviction and sentence of relator were, in our opinion, valid, and being so, without other meritorious objections and proven defective proceedings in such conviction, the writ heretofore granted herein is discharged.

*Writit discharged.*