CHRISTOPHER G. BROUZAS, *et al*

*v.*

THE CITY OF MORGANTOWN, A MUNICIPAL
CORPORATION, *et al.*

(No. 10944)

Submitted September 16, 1958. Decided November 25, 1958.

2

GIVEN, JUDGE, concurring.

*H. William Largent, Geo. R. Farmer,* for appellant.

*Clark B. Frame, Minter L. Wilson, John D. Downes,* for appellees.

Haymond, President:

This is a declaratory judgment proceeding instituted in the Circuit Court of Monongalia County on July 5, 1956, against the defendants, The City of Morgantown, a municipal corporation, Edwin C. Arkwright and Agnes J. Arkwright, in which the plaintiffs Christopher G. Brouzas and Florence K. Brouzas challenge the validity of an ordinance adopted by the Common Council of The

City of Morgantown on March 17, 1953, vacating and annulling a portion of a public city street known as Cox Place. The real estate owned by the plaintiffs, though abutting on Cox Place, does not abut on that portion of the street vacated by the ordinance but a part of the real estate owned by the defendants Edwin C. Arkwright and Agnes J. Arkwright abuts on that part of the street vacated by it.

The case was heard upon the petition of the plaintiffs, the separate demurrers of the defendants which were overruled, the separate answers of the defendants, the replications of the plaintiffs to the separate answers of the defendants, and the evidence introduced in behalf of the respective parties.

By final decree entered July 29, 1957, the court held the challenged ordinance to be null and void, overruled the motion of the defendants Edwin C. Arkwright and Agnes J. Arkwright to dismiss them from this proceeding, and awarded costs in favor of the plaintiffs against all the defendants. From that judgment this Court granted this appeal December 16, 1957, upon the application of the defendant The City of Morgantown, which will be referred to in this opinion as the defendant.

The challenged ordinance, adopted by the council March 17, 1953, by a vote of eight members for and five members against its adoption, was introduced in evidence by the plaintiffs and is expressed in these terms:

"AN ORDINANCE VACATING, ABANDONING AND ANNULLING THAT PART OF COX PLACE, FORMERLY CALLED MORGAN PLACE, NOT USED FOR STREET PURPOSES IN THE HOPECREST ADDITION OF THE FIRST WARD OF THE CITY OF MORGANTOWN, MONONGALIA COUNTY, WEST VIRGINIA.

"Whereas, it has been determined by the Common Council of The City of Morgantown that part of a turn-

around area adjacent to Lot No. 68 in the Hopecrest Addition to the First Ward of the City of Morgantown, Monongalia County, West Virginia, is not needed for street purposes or for any other public use or public purpose and that it is proper that the same be vacated, abandoned and annulled;

"Now therefore be it ordained by the Common Council of The City of Morgantown in regular session assembled:

"Section 1. That that part of the so-called turn-around, which said turn-around has a radius of 30 feet from a point in said street line, in Cox Place, formerly known as Morgan Place, as laid down and designated on the map or plat of the Hopecrest Addition to the First Ward of the City of Morgantown, West Virginia, a copy of which said map or plat is of record in the office of the Clerk of the County Court of Monongalia County, West Virginia, in Deed Book No. 221, at page 388-½, is not used for street purposes and is not needed for street purposes or for any other public use or public purpose, and that therefore it is in the interest of The City of Morgantown and of the public generally that the part of said turn-around of said Cox Place, formerly known as Morgan Place, be vacated, abandoned and annulled, and it appearing that the property of no person, firm or corporation will be damaged or injured thereby, and it further appearing that the owners of all of the property abutting upon said Cox Place with the exception of the owners of one lot, have by a written petition requested said annulment, it is therefore ordered and ordained that the following part of said turn-around of said Cox Place, formerly Morgan Place, be and the same is hereby vacated, abandoned and annulled, and that from and after the date of the adoption of this ordinance the same shall cease to be a public way or public street within the City of Morgantown, West Virginia, and the easement or right of way of The City of Morgantown therein, thereon and thereover is hereby expressly abandoned and annulled, the part of said turn-around so vacated, abandoned and

annulled being described as follows, beginning at the southwest corner of Lot No. 106 in said Hopecrest Addition, thence along a line projected in a northeasterly direction across the present area of said turn-around to the northwest corner of Lot No. 68 and the northeast corner of Lot No. 69 in said Hopecrest Addition, it being the intention hereof that the easement and right of way of The City of Morgantown, West Virginia, for street purposes over the area of said turn-around to the south of said projected line and contained within the semicircle so made is hereby vacated, abandoned and annulled.

"Section 2. That The City of Morgantown does hereby expressly retain the present 40 foot right of way and roadway of Cox Place, formerly Morgan Place, and also that part of said turn-around area not herein described as being vacated, abandoned and annulled.

"Section 3. That as a condition precedent to said annullment and to the adoption of this ordinance Edwin C. Arkwright and Tillie J. Arkwright, husband and wife, owners of Lot No. 68 in Hopecrest Addition for themselves, their heirs and assigns, shall enter into an agreement with The City of Morgantown providing that the driveway on said Lot No. 68 may be used by persons, firms and corporations for the privilege of turning and that no damages will be claimed for such use and that no complaints or charges will be made in relation thereto, said agreement to be in form acceptable to The City of Morgantown.

"Section 4. That prior to the date of the adoption of this ordinance a public hearing shall be held at a regular meeting of the Common Council of The City of Morgantown as to the vacating, abandoning and annulling of the part of the Cox Place turn-around described in this ordinance and hereby proposed to be vacated, abandoned and annulled and that due notice of such hearing shall be given by the City Clerk of The City of Morgantown by

publishing in a newspaper published and of general circulation within the City of Morgantown once each week for two successive weeks prior to the date of such hearing. Such notice shall state the date, time, place and purpose of such hearing.

"Section 5. In accordance with the provisions of the Statutes and the laws of the State of West Virginia in such cases made and provided upon the adoption of this ordinance that part of the Cox Place turn-around herein described and hereby vacated, abandoned and annulled shall revert to and become the property of Edwin C. Arkwright and Tillie J. Arkwright, husband and wife, as the owners of Lot No. 68 in said Hopecrest Addition.

"Section 6. Upon the adoption of this ordinance a duly verified copy thereof together with a plat of the area of Cox Place, formerly Morgan Place, hereby vacated, abandoned and annulled shall be recorded in the appropriate deed book in the office of the Clerk of the County Court of Monongalia County, West Virginia, as evidence of the vacating, abandoning and annulling of said part of said turn-around for public uses and public purposes as a public street or way.

"Section 7. Prior to the date of the adoption of this ordinance Edwin C. Arkwright shall pay the costs of this proceeding as the same may be fixed by the City Clerk of The City of Morgantown.

"Section 8. This ordinance shall be effective from the date of its adoption."

In 1925 the owners of the land comprised in Hopecrest Addition in the first ward of The City of Morgantown who appear to have been Wayne Cox and Thomas J. Wotring caused a map or plat of that addition, dated June 30, 1925 and showing the lots and streets and avenues within the addition, to be recorded in the office of the Clerk of the County Court of Monongalia County. By deed dated June 12, 1928, Wayne Cox and Sara D. Cox, his wife, who appear to have been the owners of the

addition at that time, conveyed to The City of Morgantown as public streets and alleys certain designated strips of land in the addition including a strip of the uniform width of forty feet, then known as Morgan Place but now known as Cox Place, which began at its western intersection with Dormont Street, extended from that point in an easterly direction for a distance of approximately 200 feet, and terminated in a circle which had a radius of thirty feet.

From the plat of the addition, introduced in evidence by the plaintiffs, it appears that a small lot designated No. 106 adjoins the eastern terminus of Cox Place and abuts on that end of the forty foot street and the northern portion of the circular terminus of that street; that lots Nos. 68, 69, 70 and 71 of the addition, located on the south side of Cox Place, abut on that street and that lot No. 68 abuts on the southern arc of the circular terminus of that street; and that lots Nos. 37, 38, 39, 40 and 41 of the addition, located on the north side of Cox Place, abut on that street and that lot No. 40 abuts on the northern portion of the circular terminus of that street. The southern arc of the circular terminus of Cox Place on which lot No. 68 abuts is the portion of the circular terminus of the street vacated by the ordinance.

Cox Place, except the circular terminus, is forty feet in width. The center portion of the street was paved in 1941 to a width of twenty three feet and on either side of this paved portion of the street there is an unimproved space eight and one-half feet wide available for use as a sidewalk. These spaces for sidewalk use are level with the improved portion of the street. There is no residence fronting on Cox Place on any of the lots which abut on the northern side of the street and, in addition to the unfinished residence of the plaintiffs on lot No. 106 at the eastern terminus of the street, there are only two residences on the lots which abut on the south side of the street, one of which is located on one of the two lots Nos. 68 and 69 owned by the defendants Edwin C. Arkwright and Agnes J. Arkwright. The

terminus of Cox Place intersects Dormont Street, one of the main streets of the addition which extends generally north and south of the intersection, and the grade of Dormont Street is fairly steep at the point of the intersection of the two streets.

The surface on the southern portion of the circular terminus of Cox Place consists of a steep embankment which rises to a height of about five feet between the southern line of the portion of the street available for use as a sidewalk and the northern line of lot No. 68 which abuts on the vacated portion of the circular terminus of Cox Place. The distance between the northern line and the southern line of the vacated portion of the circular terminus, consisting of a steep embankment, at its widest point is thirteen feet.

Sometime prior to the adoption of the ordinance which vacated the southern arc of the circular terminus the plaintiffs obtained title to lot No. 106 of the Hopecrest Addition and lots Nos. 10, 11 and 12 in a nearby addition known as South Park Addition and these four lots constitute one large parcel of land. Lot No. 12 adjoins lot No. 106 and lots Nos. 10, 11 and 12 at their eastern boundary line abut on Jefferson Street, an unimproved street which extends north and south in South Park Addition. The plaintiffs began the construction of a residence on lot No. 106 which was discontinued after the adoption of the ordinance and they have access to their property from Cox Place on the west and from Jefferson Street on the east.

In connection with a pretrial conference, the parties to this proceeding, in an order entered June 6, 1957, stipulated and agreed that the issue involved in this proceeding should be limited to the question of the validity of the ordinance adopted March 17, 1953.

Immediately after the adoption of the ordinance the defendants, The City of Morgantown, and Edwin C. Arkwright and Agnes J. Arkwright, on March 18, 1953, en-

tered into an agreement which created a driveway on lot No. 68 to be used, without liability for damages, to turn vehicles driven by persons using Cox Place in compliance with the provision of Section 3 of the ordinance.

The owners of all the lots in Hopecrest Addition which abut on each side of Cox Place, except the plaintiffs as the owners of lot No. 106, by petition requested the Common Council of The City of Morgantown to vacate the southern portion of the circular terminus of that street. During its consideration by the council and its ordinance committee the plaintiffs, on three different occasions, protested and opposed the adoption of the proposed ordinance. Initially the petition to vacate the portion of Cox Place contemplated by the proposed ordinance was denied by the council but subsequently, as already indicated, the ordinance requested in the petition of the lot owners, except the plaintiffs, was adopted on March 17, 1953.

Upon the hearing of this proceeding the plaintiffs, after introducing the ordinance and the minutes of the proceedings of the council preliminary to and in connection with the adoption of the ordinance, also introduced, over the objection of the defendants, evidence which tended to show, in contradiction of the provisions of the ordinance, that Cox Place was needed for street and other public purposes; that to vacate the portion of Cox Place embraced in the ordinance would not be in the interest of The City of Morgantown and the public generally but instead would be for the sole benefit of the defendants, Edwin C. Arkwright and Agnes J. Arkwright, as the owners of lot No. 68; and that the vacation of the portion of Cox Place, as provided by the ordinance, has injured and impaired a property right of the plaintiffs which is not possessed and enjoyed by them in common with the owners of other lots abutting on that street in that it has restricted and impaired the right of the plaintiffs of access to and from Cox Place in the use of their property and has damaged the property of the plaintiffs in an amount of from $500.00 to $3500.00.

The evidence introduced by the defendants established beyond question that the portion of the circular terminus of Cox Place vacated by the ordinance, because of the steep character of its surface, had never been improved or made usable for vehicular traffic on that street; that to render it usable for that purpose it would be necessary to grade the vacated portion of Cox Place to the level of the improved part of that street, improve its surface, and construct a retaining wall at a total cost to the city of approximately $2500.00; and that the adoption of the ordinance did not in any manner change or alter the physical conditions of Cox Place and its usability for travel, as they existed prior to its adoption, or substantially change the access of the plaintiffs to and from it in connection with the use of their property, but instead provided an additional facility for persons using Cox Place for vehicular traffic upon and over it to turn the vehicles operated by them in the driveway created by the agreement between the city and the defendants Edwin C. Arkwright and Agnes J. Arkwright.

In substance the errors assigned by the defendant, The City of Morgantown, to reverse the final decree are the action of the circuit court (1) in overruling the demurrers of the defendants; (2) in denying the motion of the defendants to stay the hearing of this proceeding until the Attorney General of West Virginia is made a party to it and served with process; and (3) in admitting incompetent evidence to contradict the provisions of the ordinance and to establish the amount of damages to the property of the plaintiffs caused by its adoption.

The contention of the defendant that the attorney general should be made a party to this proceeding is devoid of merit. The statute on which it relies, Section 11, Chapter 26, Acts of the Legislature, 1941, Regular Session, which provides that when in a declaratory judgment proceeding a statute, ordinance or franchise is alleged to be unconstitutional the attorney general shall be served with a copy of the proceeding and be entitled

to be heard, has no present application for the reason that the petition of the plaintiffs does not challenge the validity of the ordinance on the ground that it is unconstitutional but on the contrary alleges that it is invalid on other and entirely different grounds.

Under Section 2, Chapter 26, Acts of the Legislature, 1941, Regular Session, any person whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise may have determined any question of construction or validity arising under such instruments and obtain a declaration of rights, status or other legal relations under them. As the validity of the ordinance adopted by the Common Council of The City of Morgantown on March 17, 1953, is involved and as that issue is the controlling question for determination in this proceeding, the institution of this proceeding was authorized by the provisions of the statute. *LaFollette* v. *City of Fairmont,* 138 W. Va. 517, 76 S. E. 2d 572. See also *Smith* v. *Smith,* 140 W. Va. 298, 83 S. E. 2d 923; *Douglass* v. *Koontz,* 137 W. Va. 345, 71 S. E. 2d 319; *Conley* v. *Easley,* 136 W. Va. 645, 68 S. E. 2d 23; *Algoma Coal and Coke Company* v. *Alexander,* 136 W. Va. 521, 66 S. E. 2d 201; *Tharp* v. *Tharp,* 131 W. Va. 529, 48 S. E. 2d 793; *Dolan* v. *Hardman,* 126 W. Va. 480, 29 S. E. 2d 8. The relief available in a declaratory judgment proceeding is declaratory rather than coercive in character and both declaratory and coercive relief may not be combined or sought together or in the alternative in the same petition in that type of proceeding. *The Town of South Charleston* v. *The Board of Education of the County of Kanawha,* 132 W. Va. 77, 50 S. E. 2d 880; *West Virginia-Pittsburgh Coal Company* v. *Strong,* 129 W. Va. 832, 42 S. E. 2d 46.

A proceeding to obtain a declaratory judgment as to the validity of a municipal ordinance is a collateral attack upon such ordinance. *LaFollette* v. *City of Fairmont,* 138 W. Va. 517, 76 S. E. 2d 572. The findings of the council of a municipality in connection with the

adoption of an ordinance constitute the basis for the adoption of the ordinance; and such findings are legislative in character and the adoption of such ordinance involves the exercise of a purely legislative function. *LaFollette* v. *City of Fairmont,* 138 W. Va. 517, 76 S. E. 2d 572. In the absence of fraud, collusion or other wrongdoing upon the part of the council of a municipality in the adoption of an ordinance, the recitals of the facts which constitute the basis for its enactment are conclusive when the subject matter of the ordinance is within the exclusive jurisdiction of the council. *LaFollette* v. *City of Fairmont,* 138 W. Va. 517, 76 S. E. 2d 572. See also *State ex rel. Armbrecht* v. *Thornburg,* 137 W. Va. 60, 70 S. E. 2d 73; *Berry* v. *Fox,* 114 W. Va. 513, 172 S. E. 896; *Lemon* v. *Rumsey,* 108 W. Va. 242, 150 S. E. 725; *Woodall* v. *Darst,* 71 W. Va. 350, 77 S. E. 264, 80 S. E. 367, 44 L.R.A., N.S., 83, Ann. Cas. 1914B, 1278. There is a valid distinction between a finding of fact by a legislative body as a basis for legislative action and a legislative finding of fact which involves a juristic question. *State ex rel. Cashman* v. *Sims,* 130 W. Va. 430, 43 S. E. 2d 805, 172 A.L.R. 1389; *LaFollette* v. *City of Fairmont,* 138 W. Va. 517, 76 S. E. 2d 572. Though a legislative finding of a juristic fact is entitled to respect such finding is not conclusive and is subject to judicial investigation and review. *Weekley* v. *Sims,* 139 W. Va. 263, 79 S. E. 2d 847; *State ex rel. Bumgarner* v. *Sims,* 139 W. Va. 92, 79 S. E. 2d 277; *Price* v. *Sims,* 134 W. Va. 173, 58 S. E. 2d 657; *Saunders* v. *Sims,* 134 W. Va. 163, 58 S. E. 2d 654; *State ex rel. Catron* v. *Sims,* 133 W. Va. 610, 57 S. E. 2d 465; *State ex rel. Adkins* v. *Sims,* 130 W. Va. 645, 46 S. E. 2d 81; *State ex rel. Cashman* v. *Sims,* 130 W. Va. 430, 43 S. E. 2d 805, 172 A.L.R. 1389; *Berry* v. *Fox,* 114 W. Va. 513, 172 S. E. 896. In a declaratory judgment proceeding, however, the court will not inquire as to the truth or the falsity of the facts upon which action of a legislative body is based when it has sole jurisdiction of the subject. *LaFollette* v. *City of Fairmont,* 138 W. Va. 517, 76 S. E. 2d 572. See also

*Berry* v. *Fox,* 114 W. Va. 513, 172 S. E. 896; *Lemon* v. *Rumsey,* 108 W. Va. 242, 150 S. E. 725; *Woodall* v. *Darst,* 71 W. Va. 350, 77 S. E. 264, 80 S. E. 367, 44 L.R.A., N.S., 83, Ann. Cas. 1914B, 1278.

By Section 8(a), Article 2, Chapter 126, Acts of the Legislature, 1933, Regular Session, the council of The City of Morgantown is vested with power to "lay off, vacate, close, open, alter, curb, pave, and keep in good repair, roads, streets, alleys, sidewalks, crosswalks, drains and gutters" within the city for the use of its inhabitants. That provision of the statute confers exclusive jurisdiction upon the council of the city to vacate the portion of Cox Place embraced in the ordinance adopted March 17, 1953, and to adopt the ordinance to accomplish that purpose. The finding of facts disclosed by the proceedings had in connection with the adoption of the ordinance and by the recitals and the provisions of the ordinance sufficiently establish the jurisdiction of the council to adopt the ordinance. These findings can not be questioned or controverted in a collateral attack upon the validity of the ordinance. Such findings are not subject to collateral attack and there can be no inquiry concerning their truth or falsity in this proceeding. *LaFollette* v. *City of Fairmont,* 138 W. Va. 517, 76 S. E. 2d 572; *City of Avis* v. *Allen,* 83 W. Va. 789, 99 S. E. 188; *Shank* v. *Town of Ravenswood,* 43 W. Va. 242, 27 S. E. 223. In the *City of Avis* case this Court held in point 4 of the syllabus that "Where, from the record of a municipal corporation, it appears that the council found to exist the facts necessary to confer upon it the power to act in a particular case, such finding cannot be questioned collaterally." In the *Shank* case in considering the jurisdiction of the council of the municipality to submit the question of a change of boundary to a vote this Court used this language: "It seems settled that, where the facts essential to give jurisdiction to an inferior or special tribunal of limited authority are shown by its records the same presumption prevails in favor of its jurisdiction as prevails in favor of the jurisdiction of superior courts

of general jurisdiction, and the statement of jurisdictional facts can not be denied upon a collateral attack, nor will its plain errors affect it."

Inasmuch as it is clear from the evidence that the council had exclusive jurisdiction to adopt the ordinance to vacate the portion of the circular terminus of Cox Place and as the legislative findings of the council which constitute the basis for its adoption are not subject to collateral attack, in the absence of fraud, collusion, other wrongdoing on the part of the council or its lack of jurisdiction to adopt the ordinance, the evidence introduced by the plaintiff to controvert its findings of fact was inadmissible. The evidence introduced by the plaintiffs of the amount of the damages which the plaintiffs claim resulted to their property from the adoption of the ordinance was likewise inadmissible for the reason that coercive relief in the nature of damages is not obtainable upon a petition for declaratory relief in a declaratory judgment proceeding. The action of the circuit court in admitting all or any part of such evidence was erroneous.

As already indicated the evidence shows that the portion of Cox Place vacated by the ordinance produced no substantial change in the physical conditions of Cox Place as they existed prior to the adoption of the ordinance, except the creation of the additional facility of the driveway upon the property of the defendants Edwin C. Arkwright and Agnes J. Arkwright for vehicular traffic by persons, including the plaintiffs, using the street for that purpose; that the property of the plaintiffs did not abut on the vacated portion of the street; that their right of ingress and egress to and from the street in the use of their property has not been restricted or impaired by the ordinance; and that it has not caused any damage to their property. The evidence does not show that the action of the council in the consideration and adoption of the ordinance was capricious or arbitrary or without proper consideration of the rights of the plaintiffs and of the general public, or that the vacation of the portion of Cox Place by the adoption of the

ordinance has resulted or will result in any special or peculiar damage or inconvenience to the plaintiffs beyond that which will affect them in common with the public or the owners of the other lots which abut on that street. Neither the writ of certiorari nor injunctive relief is available to a person who has no direct or particular interest in the vacation or obstruction of a public street or road by public authority, and to entitle a property owner to such relief his property must abut on that part of the street or road so vacated or obstructed, or he must show that he will suffer peculiar damage or inconvenience beyond that which will affect him in common with the public or other property owners similarly situated. *Barker* v. *The City of Charleston,* 134 W. Va. 754, 61 S. E. 2d 743; *Davis Colliery Company* v. *Town of Harding,* 83 W. Va. 609, 98 S. E. 815; *Davis* v. *County Commissioners of Hampshire,* 153 Mass. 218, 26 N. E. 848, 11 L.R.A. 750; *Blanding* v. *City of Las Vegas,* 52 Nev. 52, 280 P. 644, 68 A.L.R. 1723. To entitle a property owner to declaratory relief against vacation or annulment of a public street he must establish the existence of the same conditions and satisfy the same requirements in a declaratory judgment proceeding as he must do to obtain relief by certiorari or by injunction in a suit in equity.

The plaintiffs having failed to establish their right to the declaratory relief which they seek in this proceeding, the final decree of the circuit court is reversed and set aside and this proceeding is remanded to that court with directions that it be dismissed at the cost of the plaintiffs.

*Reversed and remanded
with directions.*

Given, Judge, concurring:

I am in agreement as to the reversal, but am unable to agree with the conclusions stated by the Court in the first point of the syllabus. My belief of the extreme importance of a careful observance of material differences between principles of a collateral attack and a direct at-

tack, that litigants may not be misled to their prejudice, constrains me to write this concurring memorandum.

In 30A Am. Jur., Judgments, Section 845, speaking of the basis for the rule relating to collateral attack, it is said: "The observance of the general rule denying the right collaterally to attack a judgment is required by a due regard for the repute of the courts and for the solemnity of judicial proceedings. The rule has been adopted as the result of weighing, on the one hand, the desire of the courts to avoid results which effect positive injustice to individuals and, on the other hand, considerations affecting public policy and convenience, especially in regard to the maintenance of the integrity of property rights acquired on the faith of judicial proceedings * * *". In order to effect such purposes it is necessary to note clear, distinguishing characteristics of the two methods of attacking judgments or proceedings, the direct attack and the collateral attack. (Some courts speak of a third method, an "indirect" attack).

In considering whether the method of attack is direct or collateral, two principles, always recognized, should be kept in mind: "* * * a void judgment is no judgment at all, but a mere nullity and may be assailed in any court, anywhere, whenever any claim is made or rights asserted under it * * *". 11 M.J., Judgments and Decrees, Section 145; "* * * In order to be collaterally attacked, the want of jurisdiction must affirmatively appear on the face of the record * * *". 49 C.J.S., Judgments, Section 421. Also, principles relating to *res judicata,* and rules relating to an attack on a judgment or proceeding, whether the attack be by the direct method or by the collateral method, should not be confused. "* * * In the former case, the litigant is not attacking the judgment collaterally or otherwise; rather is he conceding its validity and seeking a judicial expression as to its evidentiary value as against him. In the latter he is questioning, not the scope of the judgment, but the judgment itself and calling upon the court to declare it a nullity * * *". 1 Freeman on Judgments, Section 304.

Van Fleet, long a recognized standard authority on collateral attack, cited and relied on by this Court, and cited and relied on by such works as Corpus Juris Secundum, defines a collateral attack, in Section 3, as follows: "A collateral attack on a judicial proceeding is an attempt to avoid, defeat, or evade it, or to deny its force and effect in some manner not provided by law. As there are only two ways to attack a judicial proceeding, direct and collateral, it is obvious that this definition complements the one in the last section, and they are both self-evident. Any proceeding provided by law for the purpose of avoiding or correcting a judgment, is a direct attack which will be successful upon showing the error; while an attempt to do the same thing in any other proceeding is a collateral attack, which will be successful only upon showing a want of power." In Section 2, the same author defines direct attack in this manner: "A direct attack on a judicial proceeding is an attempt to avoid or correct it in some manner provided by law. *ILLUSTRATIONS.*—A motion for a new trial or for a venire *de novo;* a motion in the cause to vacate, modify or correct the judgment according to the statute or the practice of the court; appeals; writs of error, *certiorari, audita querela* and prohibition; petitions for rehearing and bills of review; bills in equity or complaints and petitions under the codes to set aside, vacate, modify or correct judgments for fraud, accident, mistake or excusable neglect, are some of the modes provided by law for avoiding or correcting judgments, and are *direct attacks* * * *". I find no authority questioning such definitions, except perhaps a few cases may impliedly do so where the clear distinction between the term "collateral attack" and the term "collateral proceeding" is failed to be observed.

A direct attack is defined in 49 C.J.S., Judgments, Section 408: "A direct attack on a judgment is an attempt to avoid, correct, vacate, annul, review, cancel, or set aside the judgment in a proceeding or manner provided by law for such purpose", and in the same section a col-

lateral attack is defined as follows: "A collateral attack is an attempt to avoid, defeat, or evade a judgment, or to deny its force and effect, in some incidental proceeding not provided by law for the express purpose of attacking it."

In 30A Am. Jur., Section 852, it is stated: "* * * an attack is regarded as direct where the proceeding in which it is made is brought for the purpose of impeaching or overturning the judgment, and as collateral if made in any manner other than by a proceeding the very purpose of which is to impeach or overturn the judgment. Stated affirmatively, this rule is that a collateral attack upon a judgment is an attack made by or in an action or proceeding that has an independent purpose other than the impeaching or overturning of the judgment * * *".

As pointed out in the majority opinion, and all agree, the instant "proceeding was authorized by the provisions of the statute". That being true, it can hardly be argued that it was not such a proceeding as was not in "some manner provided by law". Yet the majority name it a collateral attack, notwithstanding the clear purpose of the proceeding. The issue drawn by the pleadings related directly to the validity of the proceeding attacked, the sole and indubitable purpose of the proceeding, insofar as the present question is concerned, being "to avoid" the effect of the proceeding of the city council.

In 1 Freeman on Judgments, Section 306, it is stated: "* * * The law of every jurisdiction prescribes the manner in which litigants must proceed to correct, vacate, review or annul judicial decisions. It specifies the remedies to be invoked and the extent to which they are available. This being true, it is but reasonable to conclude that an assailant is pursuing a very direct attack when he strikes at the judgment with one of the procedural weapons thus placed at his disposal, and per contra that his assault is essentially collateral when attempted without such legal means * * * If instituted for the very pur-

pose of setting aside, correcting or modifying the judgment, it is usually regarded as a direct attack; for the attack upon the judgment in such cases is not incidental to the object of the proceeding and the end of the proceeding is not something collateral to the judgment. If, on the other hand, the direct purpose and aim of the proceeding is to obtain some other relief than the vacation or setting aside of the judgment and the attack upon the judgment is merely incidentally involved, it will be considered a collateral attack * * *". The same author, after pointing out that proceedings for review of a judgment constitute direct attacks, says, Section 308: "* * * Yet situations arise in which the objections to the judgment cannot be reached by such proceedings. Very often the invalidating elements lie outside the record. The judgment may be perfectly sound on its face, an inspection of the files disclosing nothing to militate against its validity. Circumstances of mistake, imposition or fraud may have so entered into the case as to frustrate any legal or binding adjudication notwithstanding a record entirely free from any suggestion of such influences. To relegate the party injured thereby to the relief obtainable in an appellate tribunal which, as a rule, cannot examine into extraneous matters would be tantamount to an entire denial of justice. In such a contingency the aggrieved party is not without a remedy. As elsewhere noted in this work he may seek equitable relief from the judgment.

."The powers of a court of chancery in this respect are well recognized. It has inherent jurisdiction to relieve from fraudulent or void judgments particularly where the invalidating facts are not apparent from the record. Such equitable intervention is very often a party's only means of escape from the invalid decision; without it he would be left remediless. These considerations tend strongly to support the position taken by many courts that a litigant is engaging in a direct attack upon the judgment where he seeks equitable relief therefrom in the mode approved by law * * *".

A collateral attack may also be comprehensively defined as an attempt to avoid the effects of a judgment in a proceeding wherein the validity of the judgment is not at issue. The basis of such a rule appears to become clear when we look at the reason for the universally recognized applicable principle that a judgment "In order to be collaterally attacked the want of jurisdiction must affirmatively appear on the face of the record". 49 C.J.S., Judgments, Section 421. To permit the trial of the question of the validity of the judgment, in a proceeding wherein the validity of that judgment is not at issue, would violate well recognized principles of law relating to trials of matters at issue, and trials of issues foreign to the issues pleaded in the pending proceeding. Of course, if the invalidity of the judgment is such that it may be observed from the face of the record, no pleading is necessary, no issue is required.

In 11 M.J., Judgments and Decrees, Section 140, it is stated: "* * * A collateral attack is an attempt to impeach a judgment or decree in a proceeding not instituted for the express purpose of annulling, correcting, or modifying such judgment or decree. It is thus distinguished from a direct attack which is any proceeding provided by law for the purpose of avoiding or correcting a judgment which will be successful upon showing error."

A simple illustration, using familiar principles, perhaps would demonstrate more clearly the ever distinguishing characteristics of the two methods of attack than would a wordy critique, or many disquisitions: Suppose A obtains a money judgment against B. After the expiration of time for any review of the judgment, by appeal, writ of error, bill of review, certiorari, or otherwise, A institutes a chancery proceeding for the enforcement of the lien of his judgment against land owned by B, and files with his bill of complaint a certified copy of the money judgment. Suppose further that the certified copy shows on its face that the judgment, for one thousand dollars, was rendered by a justice of the peace,

clearly a void judgment. Since the judgment is void on its face, no issue, or pleading of such fact, is necessary or required. It may be attacked collaterally, in the chancery suit. It may also, in certain circumstances, be attacked directly, e.g., where A fails to institute a suit and B desires the alleged lien of the judgment to be declared void, as a cloud on his title to the land. Suppose, on the other hand, that the certified copy shows on its face that the judgment was rendered by a court of competent jurisdiction, and no error appears on the face of the record which would render it void, and B, in the chancery suit prosecuted for the enforcement of the lien, undertakes to avoid the effect of the judgment on the ground that the person who purportedly signed the judgment order was not, at the time of the entry thereof, judge of the court having allegedly entered the order, a fact which if established would render the judgment void. Clearly, however, since the question of invalidity does not appear from the face of the record, it must be proved. The party litigant claiming under the judgment must have the opportunity to deny, both by pleading and proof, the fact contended to render the judgment void. I assume that no one would contend that the issue as to the invalidity of the judgment was not foreign to the issue or purpose of the suit to enforce the lien of the judgment, or that evidence would be received as to the issue of invalidity of the judgment without proper pleadings. Authorities to the contrary are clear. B is not helpless, however, for he may directly attack the judgment, and "avoid, correct, vacate, annul, review, cancel or set aside the judgment in a proceeding or manner provided by law for such purpose." 49 C.J.S., Judgments, Section 408.

The holdings of this Court, with one or two possible exceptions, are in accord. In *Lough* v. *Taylor,* 97 W. Va. 180, 124 S. E. 585, the Court quoted with approval a statement from 17 Am. & Eng. Ency. Law (2d ed.), page 48, as follows: "A collateral attack is an attempt to impeach a judgment or decree in a proceeding not insti-

tuted for the express purpose of annulling, correcting, or modifying such judgment or decree."

In *State* v. *Skeen, Warden, etc.,* 136 W. Va. 805, 811, 68 S. E. 2d 683, Judge Fox, speaking for a full Court, stated: "* * * The authorities cited by the State in support of the contention that the order of the circuit court which shows the entry of the plea of guilty imported a verity, and could not be disproved, are not convincing. At most these cases bear on the question of collateral attack on court records. But if the action of a court can be shown to have been without jurisdiction, and to be void, the general rule is that a direct attack may be made at any time and in any proceeding, and this is particularly true in *habeas corpus* cases, where relief depends on a showing that the proceeding under attack was void from the beginning * * *". See *Bennett* v. *Bennett,* 137 W. Va. 179, 70 S. E. 2d 894; *Cable* v. *Cable,* 132 W. Va. 620, 53 S. E. 2d 637; *Chilhowie Lumber Co.* v. *Lance & Co.,* 50 W. Va. 636, 642, 41 S. E. 128; *Smith* v. *Johnson,* 44 W. Va. 278, 29 S. E. 509; *Wandling* v. *Straw & Morton,* 25 W. Va. 692.

Since a litigant attacking a judgment or proceeding collaterally can not draw to his aid the assistance of evidence *dehors* the record, for the simple reason that in such an attack the invalidity rendering the judgment or proceeding attacked void "must affirmatively appear on the face of the record", the extreme importance to litigants of pursuing the correct method of attack becomes apparent. The importance of the method pursued seems emphasized by the action of the United States Supreme Court in *State ex rel. Favors* v. *Coiner, Acting Warden,* 353 U. S. 944, 77 S. Ct. 824, 1 L. ed. 2d 855, 352 U. S. 987, 77 S. Ct. 389, 1 L. ed. 2d 367. By the mandate of the United States Supreme Court made in that case, we were compelled to look beyond facts disclosed by the record, and determine the truth of facts alleged to exist outside the record, which, if true, would have revealed the judgment complained of to be void, though such facts were

pleaded long after the expiration of time for any manner of review. See *State ex rel. Favors* v. *Tucker, Warden,* 143 W. Va. 130, 100 S. E. 2d 411.

The only authority relied on by the majority for its holding is *LaFollette* v. *City of Fairmont,* 138 W. Va. 517, 76 S. E. 2d 572. In considering whether the Court could reach behind what appeared on the face of the record with reference to "a finding of fact by a legislative body as a basis for legislative action", the Court did say, I think correctly, that the proceeding "* * * in that aspect, constitutes a collateral attack upon a legislative finding * * *". It is significant that the application of the rule was specifically limited to one "aspect" of the case. That is a wholly and materially different conclusion from one saying that every "proceeding to obtain a declaratory judgment as to the validity of a municipal ordinance is a collateral attack upon such ordinance". Suppose such a proceeding, instituted long after the expiration of time for any manner of review, wherein it is alleged that the ordinance is void because of some fact not appearing on the face of the record, say for the reason that the persons voting the enactment of the ordinance were not, at the time, legally constituted members of the city council. This Court would then be forced to follow one of two courses, and there exists only two courses if the holding in the instant case, to the effect that every "proceeding to obtain a declaratory judgment as to the validity of a municipal ordinance is a collateral attack", is followed: The Court may forget the always recognized principle that a void judgment is a nullity and may be attacked by one or the other of the two methods at any time and hold the attack to be collateral, and deny relief, for the reason that the facts rendering the proceeding or ordinance void do not appear from the face of the record; or the Court may ignore the other always recognized principle that in a collateral attack the fact rendering the proceeding or ordinance void must appear from the face of the record, then look beyond the face of the record, receive new or evidence *dehors* the

record, and determine the truth of the contention, as it was compelled to do in the recent *Favors* case, cited above. Which way will the Court turn?

I am of the view, however, that another principle of law, peculiarly applicable to the facts of the instant case, controls, and makes necessary the result announced by the Court. The principle is clearly expressed in Points 2 and 3 of the syllabus. It seems academic that the validity or sufficiency of a legislative finding, where such validity or sufficiency may be questioned, absence fraud or any wrongdoing, must be determined from the facts, and only from the facts, before the legislative body at the time of the enactment. Validity of Legislation can not be made to depend on such subsequent facts as might be or become available for proof. The principle is akin to one usually followed by an appellate court, that controversies may only be determined from the record made in the trial court.