Matthias, J.
 

 The question of fact presented by the pleadings is whether there are sufficient funds to the credit of the Division of Aid for the Aged to meet and pay warrants which the relator seeks to have drawn by the respondent pursuant to the purchase order and vouchers of the relator. Whether there are funds available for such purpose turns upon the constitutional validity of the statutory provisions involved and the actions of the Controlling Board pursuant thereto which are challenged by the respondent.
 

 Section 1359-17, General Code (115 Ohio Laws, pt. 2, 436), prior to its amendment effective August 14, 1941 (119 Ohio Laws,-), contained the following provision: “Aid payable under this act shall be paid monthly by the Treasurer of State upon warrants drawn by the Auditor of State.”
 

 Pursuant thereto warrants in payment of aid for the aged had been drawn by the Auditor of State and by him delivered through the mails to persons entitled thereto. Funds for the payment of postage for such purpose had been provided by appropriations to the “Auditor of State, Bureau of Aid for the Aged.” Ac
 
 *4
 
 cordingly, the appropriation for such function for the years 1941 and 1942 (effective June 3, 1941, House Bill No. 665) was made in such manner.
 

 Section 1359-17, General Code, as amended effective August 14, 1941, provides as follows: “Aid payable under this act shall be paid monthly by the Treasurer of State upon warrants drawn by the Auditor of State. Warrants shall be delivered to the recipient to whom payable, or his duly qualified guardian, by the Division of Aid for the Aged in such manner as the division may prescribe.”
 

 By virtue of this amendment, the duty of delivering such warrants to those entitled thereto now devolves upon the Division of Aid for the Aged.
 

 Section 5 of House Bill No. 665, the General Appropriation Act, effective June 3, 1941, provides in part as follows:
 

 “If a law requires the transfer or abolition in whole or in part of the functions of any department, institution, office, or other agency or body for which appropriation is made, if such appropriation relates solely to functions transferred or abolished, then in case of transfer, the appropriation shall likewise be transferred, and in case of abolition, the authority to incur obligations under authority of such appropriation shall cease. If such appropriation relates both to functions so transferred or abolished and to functions not so affected, then the Controlling Board shall decide what part of such appropriation relates to the functions so affected and such transfers shall be made or appropriations lapsed as the Controlling Board shall determine.”
 

 It is here clearly stated that the funds provided to perform a designated function shall by the action authorized be made available to the department charged by law with the administration of that function. The function of mailing warrants to the recipients of aid for the aged having been duly transferred from the Audi
 
 *5
 
 tor of State to the Division of Aid for the Aged, the Controlling Board proceeded to perform the duties assigned it by the statutory provisions above set forth and ascertained and determined the part of the appropriation theretofore made which related to the function transferred from the Auditor of State to the Division of Aid for the Aged. Thereby the sum of $12,300 for the year 1941 and the sum of $50,500 for the year 1942 for postage were transferred from the appropriation to the Auditor of State, but designated for the Division of Aid for the Aged, to the appropriation for the Department of Welfare, Division of Aid for the Aged.
 

 The auditor challenges the validity of such action of the Controlling Board and the constitutionality of the legislative provision under which the board assumed to act, upon the ground that such action constituted an exercise of legislative power. There is no claim of an abuse of discretion upon the part of the Controlling Board, nor is it charged that the funds found to be essential to perform the designated function were in excess of the requirement for such purpose.
 

 The respondent contends that the Controlling Board is powerless to transfer any funds, notwithstanding the transfer of the function for the performance of which such funds were originally designated and appropriated. This, of course, is upon the theory that the Controlling Board is making an appropriation of funds. Such, however, is not the fact. The Legislature presumably had ascertained the amount required to cover the expense of performing the duties designated and then proceeded to set aside in the form of an appropriation the sum of money it-had found was required for such purpose. The Legislature then provided that when any function was transferred from one department to another, the funds which had been appropriated therefor should follow such function. The authority conferred upon the Controlling Board and
 
 *6
 
 exercised by it was only that of ascertaining the facts necessary to consummate such transfer of funds in order that the department to which the function in question had been transferred could perform and discharge the duties required of it by statute. The Controlling Board was empowered to “decide what part of such appropriation relates to the functions” transferred. Such duties are administrative in character. Its power and authority are thus specifically limited and circumscribed. Neither the statutory provision in question nor the action taken by the Controlling Board thereunder is violative of either Section 1 or 22 of Article II of the state Constitution.
 

 The writ of mandamus sought by the relator is allowed.
 

 Writ allowed.
 

 Weygandt, C. J., Turner, Williams, Hart, Zimmerman and Bettman, JJ., concur.