STATE BY C. S. DAVIS, *Director, Etc.*

*v.*

C. H. MUSSELMAN COMPANY

(CC755)

Submitted February 7, 1949. Decided March 28, 1950.

*William C. Marland,* Attorney General, *Londo H. Brown,* Assistant Attorney General, *Leo Loeb* and *Franklin W. Kern,* for plaintiff.

*Martin & Seibert,* for defendant.

RILEY, JUDGE:

The State of West Virginia by C. S. Davis, Director of Unemployment Compensation, filed its notice of motion for judgment in the Circuit Court of Kanawha County, West Virginia, against C. H. Musselman Company, a corporation, seeking judgment against the defendant in the sum of $1,462.91, with interest on $1,374.11, being the principal thereof, at the rate of one per cent a month from the date of an affidavit attached thereto, for the period from July 1 through September 30, 1947.

On August 23, 1948, the defendant filed its affidavit, as required by statute, and thereupon it filed a plea of general issue and special pleas Nos. 1, 2 and 3.

Special plea No. 1 avers that defendant owes nothing on account of principal and interest, as set forth in the notice of motion for judgment, because by Chapter 130, Acts of the Legislature, 1945, the Legislature provided that an individual working less than one hundred days during his base period in an industry recognized as seasonal, such as food processing and canning, shall not be eligible for benefits unless he has earned wages during his base period in other covered employment equal to and not less than one hundred dollars. The plea further avers that the amount sued for, that is the sum of $1,-374.11, with interest thereon, aggregating in all $1,463.91,

represents contribution payments for the period from July 1 through September 30, 1947, with interest thereon, on account of individuals working less than one hundred days during their base period for the defendant in a seasonal industry such as food processing and canning; and that such individuals were not eligible for benefits because none of them had earned wages during his base period in other covered employment equal to and not less than one hundred dollars; and that, therefore, defendant owes nothing on account of the above amount.

Special plea No. 2 alleges that this cause of action arises under the provisions of Chapter 1, Acts of the Legislature, Second Extraordinary Session, 1936, as amended; that under Section 19 of Article 5 thereof, an employer, who has made payment, or interest, may make application for an adjustment thereof in connection with subsequent payments and a refund thereof, if adjustment cannot be made; that under such section of the statute, the defendant, having paid to certain listed persons in amounts set opposite their names over the period beginning about the 22nd day of August, 1945, and continuing until the end of the season during which the plant of defendant was operated, paid to the plaintiff unemployment compensation in the aggregate of $2,858.71, on account of said listed persons, each of whom worked less than one hundred days and none of whom had made one hundred dollars or more in covered employment, during his base period, and each of whom was a seasonal employee within the meaning of Section 1-a, Article 6, of the statute aforesaid. Attached to said plea are the names of such employees of the defendant, together with their social security numbers, the days worked, their earnings for 1945, and the unemployment taxes paid at 2.7 per cent on each employee. The plea further alleges that the defendant made demand on C. S. Davis, Director of the Department of Unemployment Compensation, by petition addressed to his office at the State Capitol on August 7, 1946, that being within two years after the payments had been made, for return of the money paid; that the director refused to

pay the same, or any part thereof; that defendant is entitled to have each of said amounts repaid to it in this proceeding; that it has complied with each and all of the sections of the statute aforesaid for such reimbursement and repayment and is entitled to recover on account of this demand each of the sums so paid on account of each of the defendant's employees aforesaid, in the aggregate sum of $2,858.71.

Plea No. 3, is substantially the same as plea No. 2, except that it covers the season of 1946, instead of 1945, and involves a payment of $9,073.40 into the unemployment compensation fund.

The plaintiff filed amended demurrers to each of the special pleas. The Circuit Court of Kanawha County, having sustained the several demurrers to defendant's pleas, on its own motion certified to this Court its rulings on said demurrers on a certificate containing the following questions:

"1. Is the defense set up by the defendant in its special pleas in the nature of an original suit against the plaintiff, from which it is immune under Section 35 of Article VI of the Constitution of the State of West Virginia?

"2. Do defendant's special pleas present a defense to plaintiff's notice of motion for judgment?

"3. Do the defendant's special pleas, alleging that under the provisions of Chapter 21A, Article 6, Section 1-a, Code of West Virginia, certain of its employees may not be eligible for unemployment compensation benefits, relieve defendant from paying contributions on the wages of such employees and present a defense to the cause of action set forth in plaintiff's notice of motion for judgment?

"4. Is defendant entitled to reimbursement or credit for the amounts paid by it into the unemployment compensation fund as contributions on the wages of seasonal employees who may not be eligible for benefits therefrom?

"5. Is defendant liable for payments in respect to all 'wages' paid for 'employment' under the

definitions of wages and employment in article 1, section 3, chapter 21A, as amended, during each year in which it was and is subject to provisions of said chapter 21A as amended, notwithstanding the provisions of Article 6 of said Chapter?"

In the case of *State of West Virginia by C. S. Davis, Director,* v. *Ruthbell Coal Company,* 133 W. Va. 319, 56 S. E. 2d 549, this Court held that the defense set up by defendant is not a suit against the State of West Virginia. In that case it was held that a counterclaim in the nature of a special plea growing out of the same transaction may be filed. This Court invited attention in the *Ruthbell* case to the fact that under Article 8, Chapter 1, Acts of the Legislature, Second Extraordinary Session, 1936, money is paid in the first instance into the clearing account; that the director is required to maintain three separate accounts: (1) A clearing account; (2) an unemployment trust account; and (3) a benefit account; and that out of this clearing account are paid the principal of all refunds under Article 5, Section 19. The balance is regarded as an unemployment trust fund paid into the treasury of the United States to the credit of the fund.

In the instant case, it must be remembered that under Article 1, Section 3, Chapter 130, Acts of the Legislature, Regular Session, 1945, a base period employer is any employer who in the base period for any benefit year paid wages to an individual who filed claim for unemployment compensation within such benefit year. Section 1-a, Article 6 of the 1945 statute provides that the employee shall not be eligible for benefits unless he has worked one hundred days or more, or unless he has earned wages in some covered employment equal to not less than one hundred dollars. As suggested in brief of counsel for defendant, the word "employer" must mean "base period employer", for a "base period employer" is the kind of employer covered by the Act.

Section 1-a, Article 6, Chapter 130, Acts of the Legislature, 1945, designated in the statute as "Seasonal Employment" provides that "An individual working less than

one hundred days during his *base period* in an industry recognized as seasonal, such as food processing and canning, shall not be *eligible* for benefits unless he has earned wages during his *base period* in other covered employment equal to not less than one hundred dollars." (Italics supplied.) Section 1 of Article 6 of the Unemployment Compensation Statute, Chapter 1, Acts of the Legislature, Second Extraordinary Session, 1936, defines eligibility qualifications, and Section 4 prescribes facts required to *disqualify* an individual who is eligible for benefits from receiving them. Thus the statute draws a clear distinction between eligibility for benefits and disqualification for benefits. It therefore seems that an unemployed person, subject to the Act, may be eligible for benefits but disqualified to receive them under the Act. Section 1, Article 6, of the 1945 Act, as heretofore stated, deals with eligibility qualifications, and this section is followed immediately by Section 1-a, Article 6, under consideration, which determines when an individual working in an industry recognized as seasonal, such as food processing and canning, shall be eligible for benefits. Certainly, if an individual working in such recognized seasonal industry works less than one hundred days during his base period in the seasonal industry, or does not earn wages during his base period in other covered employment of one hundred dollars or more, he is ineligible for benefits under Section 1-a, and, conversely, if an individual, working in such seasonal industry, works for one hundred days or more during his base period in the seasonal industry, or has earned wages during his base period in other covered employment in an amount of one hundred dollars or more, he is eligible for benefits. Thus Section 1 of the statute, dealing with eligibility qualifications, and Section 4, dealing with disqualifications for benefits, cover two distinct classes of prospective claimants, that is, those who are not eligible for benefits, and therefore are not covered by the Act; and those, who being eligible for benefits and thus are within the Act, are nevertheless disqualified to receive benefits under the provisions of the Act. Likewise Section 1-a deals

with a distinct class of prospective claimants, and provides the conditions under which they are eligible and those under which they are not eligible for benefits. Unless an individual working in an industry recognized as seasonal works one hundred days or more during his base period, or has earned wages during his base period in some other covered employment of one hundred dollars or more, he is not eligible for benefits, and, therefore, is not covered by the Act.

We think the foregoing was the clear intent of the Legislature when Section 1-a is considered in the light of the circumstances which prompted its enactment.

When the Unemployment Compensation Statute, Chapter 1, Acts of the Legislature, Second Extraordinary Session, 1936, was enacted, it provided in Article 6, Section 20: "The director shall study and investigate the prevalence of part-time and seasonal employment in the state. He shall prepare a plan covering the projections of this chapter with respect to individuals in part-time and seasonal employment and shall submit such plan to the Legislature, which convenes in January, one thousand nine hundred thirty-nine." This mandate of the Legislature was not fulfilled, because there is nothing in the history of the instant legislation which would indicate that anything was affirmatively done with reference to seasonal employment until the enactment into law of Section 1-a, Article 6, Chapter 130, Acts of the Legislature, 1945, under appraisement in this case, and this legislation may have been prompted into enactment by a series of events, the recital of which immediately follows.

In the fall of 1944 seasonal employees at the apple processing plant of C. H. Musselman Company, the defendant here, were "laid off" during the harvest of that year, and shortly thereafter filed their claims under Article 7 of Chapter 1, Acts of the Legislature, Second Extraordinary Session, 1936, as amended. These claims, having been rejected upon hearing by the deputy director, were appealed under Section 7 of Article 7 to a trial examiner,

and then appealed to the board of review, which reversed the finding of the trial examiner, and benefits were awarded to each claimant. The director of unemployment compensation then applied to the Circuit Court of Kanawha County for an appeal, which was granted. That court held that it lacked jurisdiction and dismissed the appeal on the ground that Section 11, Article 7, Chapter 130, Acts of the Legislature, 1945, contains no provision granting to the director the right to appeal, and that such director was not a person whose interests were involved. Upon application to this Court for an appeal, the appeal was denied. Thereupon, the seasonal employees of the defendant here, C. H. Musselman Company, caused to be brought an original proceeding in mandamus, *State of West Virginia ex rel. Aikens v. C. S. Davis, Director, etc.*, 131 W. Va. 40, 45 S. E. 2d 486, for the purpose of requiring the payment of the claim of relator and two hundred and sixteen other seasonal employees similarly situated. In that proceeding this Court awarded the writ, and required the payment of unemployment benefits to two hundred and seventeen of such seasonal employees. Perhaps prompted by the action of the board of review in reversing the finding of the trial examiner and awarding benefits to each claimant in the *Aikens* case, the director of unemployment compensation, or those working in the interests of the department, brought about the enactment of Section 1-a, Article 6, Chapter 130, Acts of the Legislature, Regular Session, 1945, to take care of and protect against the very situation involving the same defendant and its seasonal employees as disclosed by the *Aikens* case. The department's part in bringing about the enactment of the instant legislation, according to the brief filed on behalf of the director, was to relieve seasonal employers of what may have been deemed to be the unfair requirement of paying benefits, which necessarily occurred regularly at the end of each season. If the legislation, as stated in defendant's brief, was "secured by the director of unemployment compensation to cut off" defendant's seasonal employees from compensation "under the general act by adoption of a method under which none of

them would receive compensation", there is nothing in this record to warrant such statement. Nevertheless, the seasonal employment legislation did serve to relieve seasonal employers from what may have been deemed the unfair requirement of being charged with the payment of benefits as regularly from year to year the end of the seasonal activities unemployment of its seasonal employees ensued. Incident to the enactment of Section 1-a, Article 6, Chapter 130, of the 1945 Acts, the amendment did, as we believe the Legislature intended it to do, declare ineligible for benefits those seasonal· employees who did not work at least one hundred days during their base periods or had not earned at least one hundred dollars during such base periods in some covered employment. Thus said Section 1-a, pursuant to the legislative intent, took such class of seasonal employees out of the operation of the Unemployment Compensation Statute, not because they were disqualified, but because they were ineligible for benefits, and therefore were not within the provisions of the Act. After the enactment of Section 1-a, Article 6, this Court in the *Aikens* case, which involved claimed benefits for unemployment due to the end of C. H. Musselman Company's seasonal activities in the fall of 1944, before the enactment of Section 1-a, Article 6, required the director to pay benefits to defendant's seasonal employees. Prior to the enactment of said Section 1-a, all seasonal employees were eligible for benefits, and were paid upon the expiration of their work at the end of the industrial season; but with the enactment of the seasonal unemployment amendment to the unemployment statute, a class of seasonal employees were taken out of the beneficial provisions of the Act, because its members either did not work one hundred days during their base periods in the seasonal industry or did not earn at least one hundred dollars in wages in some covered employment, and thereby were not entitled to receive benefits, not because of their disqualification, but, as heretofore suggested, because they were ineligible and were no longer within the purview of the Act.

218

Nevertheless, the director in this proceeding seeks to recover from the defendant herein contribution payments on all of defendant's seasonal employees, notwithstanding most of them were ineligible for benefits. The defendant, as heretofore indicated, seeks to defend against such claim and to recover from the director the amount of contributions paid on account of the ineligible seasonal employees since the effective date of said Section 1-a, Article 6, of the Act of 1945. By its special pleas the defendant has designated the name, the social security number, and the amount of contribution paid on account of each ineligible employee.

We are of opinion that the Legislature, having intended by Section 1-a, Article 6, of the 1945 Act, to relieve seasonal employers, including the instant defendant, from the payment of contributions on account of many of their employees who are now rendered ineligible under the provisions of the Act, it was also the legislative intent to take *pro tanto* the seasonal employers of such ineligible employees out of the operation of the Unemployment Compensation Statute, and thus relieve them from the payment of contributions on account of such ineligible employees. It seems that this is a just and equitable solution of a problem which has concerned both the department and seasonal employers. Because it is just and equitable, we are prompted to the opinion that Section 1-a, Article 6 of the 1945 Act, expresses the legislative intent as we have indicated. In so holding, we are not to be understood to say that the duty to pay contributions rests on the payment of benefits. To do so, as indicated by the director's counsel, would render impracticable the operation of the fund, for there are many employers who, because of good employment records, have for many years, and will continue for long periods of time, without any of their employees or any substantial number of their seasonal employees receiving benefits. In such cases, notwithstanding our holding in this case, the employers must pay contributions, for had they not been required to do so in the first instance, the fund would never have

been successfully established. When the fund was started in the year 1936, the time of the enactment of the unemployment compensation statute, until 1945, when Section 1-a, Article 6, Chapter 130, Acts of the Legislature, 1945, was enacted, seasonal employees, such as those involved in the instant proceeding were within the operation of the Act; and the employer was required to pay contributions into the fund, with respect to wages paid to them, and the employer's account was from time to time charged with the payment of benefits. But this case does not involve the manner in which the fund was established in the first instance, nor does it involve the integrity of the fund as it is now established, for we simply hold that a segment of employees employed by a seasonal employer, who originally came within the provisions of the Unemployment Compensation Law, was taken out of the operation of the statute by the enactment of the seasonal employment amendment; and that such employees cannot obtain benefits for the reason that they are rendered ineligible therefor. By the same token, the employer is not a base period employer as to them.

In arriving at the foregoing conclusion, we are aided by two cardinal rules of statutory construction: (1) The tax involved is an excise tax *(State ex rel. Department of Unemployment Compensation v. Continental Casualty Co.,* 130 W. Va. 147, 153, 42 S. E. 2d 820), and as such the statute should be given a liberal construction in favor of the taxpayer, but in a manner not inconsistent with the purposes of the statute; and (2) if we should hold otherwise there would be grave doubt as to the constitutionality of the seasonal employment amendment and the rule of statutory construction that a statute should be interpreted and applied in a manner, not inconsistent with its purposes, so as to avoid rendering it unconstitutional, is applicable to the instant case. *Slack v. Jacob,* 8 W. Va. 612, 584; *Chesapeake and Ohio Railroad Company v. Patton,* 9 W. Va. 642, 655; and *City of Wheeling v. American Casualty Co.,* 131 W. Va. 584, 48 S. E. 2d 404.

In the appraisement of this case we have taken occasion

to review the provisions of the unemployment statutes, relating to employees in seasonal industry, in those states in which such legislation has been enacted, and in no state, except the State of West Virginia, is the seasonal period of employment without benefit of any adjustment whatever fixed at an arbitrary number of days. Counsel for plaintiff in their brief on the reargument and resubmission of this case say that the provision of the Wisconsin Unemployment Reserves and Compensation Act, Wisconsin Statutes, 1947, Chapter 108, Title XIII, Section 108.04 (4), dealing with seasonal employment "is comparable * * * with the seasonal provision in the West Virginia law." With this position we do not agree. The Wisconsin statute embracing seasonal employment provides that an employee shall not be eligible to receive benefits, based on his weeks of employment by his employer ending within a given calendar year, if during such year he has been employed by such employer solely within the active canning season or seasons " (as determined by the commission)", unless the employee has earned wages, other than for seasonal services, of one hundred dollars or more during the fifty-two weeks preceding his first week of employment by such employer, ending within such year. This statute provides that the length of the canning season of each employer shall be determined by the commission. Such determination, of course, must be within the exercise of sound discretion. No authority need be cited for this last position. The seasonal provision of the unemployment statutes of Arizona, North Carolina and Virginia, provide for an official determination of the operating season for each employee's base period seasonal employer. Arizona Code, 1939, Volume 4, Chapter 56, Article 10, Section 3c; General Statutes of North Carolina, 1943, Chapter 96, Section 16, as amended; Code of Virginia, 1950, Volume 9, Title 60. The seasonal provisions in the statutes of Ohio and Vermont provide that the longest seasonal period which is customary for each operation is determinative of the seasonal period within which payment of benefits may be made. Page's Ohio General Code, Annotated, Volume 1-A, Chapter 23a,

Section 1345-10; Vermont Statutes, Revision, 1947, Title 23, Chapter 250, Section 5376. Likewise the statutes of Alabama, Georgia, Maine, South Carolina and South Dakota provide for an official determination of the seasonal period during which benefits may be paid to seasonal workers, which determination, of course, must be reasonable. Code of Alabama, 1940, Title 26, Section 210; Georgia Laws, Extraordinary Session, 1937-1938, page 359, adding Subsection (g) to Section 3 of the 1937 Act; Public Laws of Maine, 1949, Chapter 430, Section 21; Code of Laws of South Carolina, 1942, Volume 4, Section 7035-83 (e) ; South Dakota Code, 1939, Section 17.0802 (10). The Arkansas statute, Arkansas Statutes, 1947, Title 81, Chapter 11, Section 4 (g), simply provides that benefits may not be paid to seasonal employees on account of unemployment occurring outside their nonseasonal employment, and may only be paid upon the basis of wages earned in other employment with covered employers. The Colorado Employment Security Act, Session Laws of Colorado, 1941, Chapter 224, Section 3, Subsections (d) and (f), as amended by Session Laws Colorado, 1949, Chapter 245, Section 3 (d), puts a limit on the amount of benefits paid to a seasonal worker for wages earned during the nonseasonal period. The Delaware Unemployment Compensation Law, Section 19, Laws of Delaware, Volume 45, page 1004, provides that no benefits shall be paid during certain prescribed months to any claimant seventy-five per cent of whose wages is received in seasonal employment; and the Michigan statute, Unemployment Compensation Act, Compiled Laws, Chapter 421, Section 21a, provides that a seasonal employer shall pay contributions at the flat rate of three per cent. Unlike Section 1-a, Article 6, Chapter 130, Acts of the Legislature, 1945, which prescribes the maximum time in which a seasonal worker must work in a seasonal industry, the unemployment statutes of Minnesota and Missouri provide for the minimum period or periods for the operation of a claimed seasonal industry in order to constitute employment therein seasonal. The Minnesota Employment and Security Law, Minnesota Statutes Annotated, Section 268.04, Subdivision

26, and Section 268.07, Subdivision 5, provides that in order for an industry to be seasonal within the statute, it should be customary for the industry to operate only during the regularly recurring period or periods of less than twenty-six weeks in any calendar year, and the director of unemployment "shall, after investigation and hearing, determine and may thereafter from time to time redetermine such customary period or periods of seasonal operations." The Missouri Unemployment Compensation Law, Revised Statutes, Annotated, Volume 20, Section 9429 (f) (3), provides that for an industry to be "seasonal", it should be customary that the industry be operated "only during a regular recurring period or periods of less than 15 weeks in a calendar year"; and the unemployment division shall "upon application by any employer after investigation and hearing, determine or redetermine the longest seasonal period or periods to be customary in such seasonal industry," which determination shall remain in effect for two years from the effective date thereof, but the unemployment division, on its own motion, may make redetermination after investigation and hearing prior to the expiration of such two years.

But Section 1-a, Article 6, Chapter 130, Acts of the Legislature, 1945, is the only legislative provision enacted by any state in the Union which arbitrarily, without any opportunity for readjustment, sets a maximum definite period, in this case, one hundred days, as the length of time a seasonal worker, who has earned less than a prescribed sum of money in some other covered industry, must work in his seasonal industry, in order to be eligible for benefits.

We think that if defendant's actual seasonal period extends for less than one hundred days, this legislative provision, if applied to all defendant's seasonal employees, would be arbitrary, and, in our opinion, clearly beyond the legislative intent. After all is said and done, it is peculiarly within the province of this Court to interpret the statutory law of this State and in doing so the Court is not bound, and perhaps should not be persuaded, by the deci-

sions of other jurisdictions based on statutory laws different from the West Virginia statute immediately under appraisement.

The rulings of the Circuit Court of Kanawha County in sustaining plaintiff's demurrers to defendant's pleas are reversed and this proceeding is remanded to said circuit court for further proceedings not inconsistent with the principles enunciated in this opinion.

*Rulings reversed and case remanded.*