The Board of Education of Wyoming County, *et al.*

*v.*

The Board of Public Works, *et al.*

(CC848)

Submitted May 5, 1959.          Decided June 23, 1959.

594

*Lively, Light & Francis, J. Henry Francis, Jr.,* for plaintiffs.

*W. W. Barron,* Attorney General, *Giles D. H. Snyder,* Assistant Attorney General, for defendants.

HAYMOND, JUDGE:

This is a declaratory judgment proceeding instituted in the Circuit Court of Kanawha County in January 1959, upon due notice, in which the plaintiffs, The Board of Education of the County of Wyoming, a corporation, The Board of Education of the County of Wood, a corporation, The Board of Education of the County of Hardy, a corporation, and The Board of Education of the County of McDowell, a corporation, seek a declaration of the relative rights and obligations of the plaintiffs and the defendants, The Board of Public Works, a corporation, Cecil H. Underwood, Governor, Joe F. Burdette, Secretary of State, Edgar B. Sims, Auditor, R. Virgil Rohrbough, State Superintendent of Free Schools, Orel J. Skeen, State Treasurer, W. W. Barron, Attorney General, and John T. Johnson, Commissioner of Agriculture, ex-officio members of The Board of Public Works, the State Board of School Finance, and R. Virgil Rohrbough, State Superintendent of Free Schools, John A. Field, Jr., State Tax Commissioner, and George B. Vieweg, Jr., Commissioner of Finance and Administration, ex-officio members of the State Board of School Finance, relating to and arising from an order of The Board of Public Works, dated December 9, 1958, which required all accounts receiving appropriations from general revenue for the fiscal year 1958-1959 to be reduced to the extent of five per cent and caused the reduction of five per cent to be placed in a reserve account, pursuant to the provisions of Section 35, Article 5, Chapter 5, Code, 1931, as amended.

The petition of the plaintiffs contains, among other averments, the following material allegations which upon demurrer are to be regarded as true.

The Legislature of West Virginia, at its regular 1958 session, appropriated the sum of $52,005,220.00 for state aid for schools for the fiscal year beginning July 1, 1958 and ending June 30, 1959 to be distributed as provided in Account No. 295, Chapter 1, Acts of the Legislature, 1958, Regular Session. Pursuant to Article VI, Section 51 of the

Constitution of West Virginia, the foregoing appropriation was based upon estimates of revenue for the fiscal year made by The Board of Public Works and set forth in the budget prepared by it and submitted to the Legislature and also included in the budget document for the fiscal year. Subsequently the State Board of School Finance, pursuant to Chapter 18, Article 9A, Code, 1931, as amended, determined the total school foundation program for each county in the State and allocated and certified to each county its share of the total funds available for state aid for schools during that fiscal year. The amount allocated and certified to the plaintiff The Board of Education of the County of Wyoming was $1,515,-588.00, to the plaintiff The Board of Education of the County of Wood was $1,671,653.00, to the plaintiff The Board of Education of the County of Hardy was $398,-475.00, and to the plaintiff The Board of Education of the County of McDowell was $3,235,741.00. After the allocation of the foregoing amounts each plaintiff prepared and filed with the State Board of School Finance a schedule of payment of the state aid allocated to it by the State Board of School Finance. Each schedule was approved by the State Board of School Finance and payment of state school aid was made by it to each of the plaintiffs in accordance with the approved schedules until the issuance of the order of The Board of Public Works on December 9, 1958, requiring a reduction of five per cent in all accounts receiving appropriations from general revenue for the fiscal year.

On December 8, 1958, the Governor of this State informed the members of The Board of Public Works that receipts for the general revenue fund for the first five months of the fiscal year were $3,500,000.00 less than the estimated needs for appropriations from that fund and recommended that the board invoke the provisions of Section 35, Article 5, Chapter 5, Code, 1931, as amended, and reduce equally and pro rata all appropriations from general revenue in the amount of five per cent; and pursuant to that recommendation The Board of Public Works by order adopted December 9, 1958, required that all ac-

counts receiving appropriations from general revenue for the fiscal year be reduced to the extent of five per cent and that the reduction of five per cent be placed in a reserve account.

Pursuant to the order of The Board of Public Works the State Board of School Finance established a reserve of five per cent of the general revenue fund in the account of state aid for schools in the sum of $2,591,511.00 and notified each county board of education in the State, including the plaintiffs, that in the absence of any later adjustment the amount of state aid for schools to be distributed to each county during the remainder of the fiscal year would be less than the amount previously allocated and certified to each county and fixed the amount by which each allocation would be reduced. The reduction for the plaintiff The Board of Education of the County of Wyoming was $67,929.00, for the plaintiff The Board of Education of the County of Wood was $74,925.00, for the plaintiff The Board of Education of the County of Hardy was $17,860.00, and for the plaintiff The Board of Education of the County of McDowell was $145,027.00. After the original allocations of state aid for schools were certified to the plaintiffs by the State Board of School Finance each plaintiff determined and fixed the school terms for its county, entered into binding contracts for teachers and other personnel, budgeted supplies, equipment, transportation and other necessities, and fixed the curriculum and the activities to be provided in accordance with the original allocation.

Since notified of the orders of The Board of Public Works and the State Board of School Finance requiring reduction in the allocations of state aid for schools each plaintiff has reviewed its budget in an effort to set up the reserve required by the State Board of School Finance and has found that such reduction necessarily requires a shorter term of school than that previously fixed, or a decrease in the salaries of teachers provided by contract, or in the teaching force and other personnel, or elimination of essential parts of the prescribed curriculum and

activities, or loss of irreplacable teaching personnel, or possible loss of accreditation, and will result in uncertainty and confusion and in irreparable harm and injury to the administration, control and management of all the schools in each county.

The petition further alleges that Section 35, Article 5, Chapter 5, Code, 1931, as amended, and the order of The Board of Public Works based upon that statute, are unconstitutional and void particularly to the extent that they apply to appropriations by the Legislature for state aid for schools; that the statute is an unconstitutional delegation of legislative power in violation of Article V, Section 1, Article VI, Section 51, and Article XII, Section 5 of the Constitution of West Virginia; and that if the provisions of the statute are valid they do not extend or apply to appropriations made by the Legislature for state aid for schools. The petition further alleges that the plaintiffs have urged and requested the defendants to rescind or modify the order of The Board of Public Works and their action taken pursuant to it insofar as they apply to appropriations made by the Legislature for state aid for schools and the allocation of such appropriations to each plaintiff but that the defendants have failed and refused so to do.

The prayer of the petition is that it be filed and the defendants be required to answer it; that the Court determine the question of the validity and effect of Section 35, Article 5, Chapter 5, Code, 1931, as amended, and the rights of the parties under that statute; that the Court hold that the provisions of the statute and the order of The Board of Public Works do not apply to appropriations made by the Legislature for state aid for schools; that the Court restrain the defendants from any interference, change or alteration in the allocation and distribution of the appropriations made by the Legislature for that purpose for the fiscal year and require distribution of the full amount of state aid for schools previously allocated to each plaintiff for the fiscal year by the State Board of School Finance; and that the plaintiffs be granted general relief.

By their demurrer the defendants challenged the legal sufficiency of the petition on the ground that it fails to show the existence of a justicible controversy between the parties which is essential to the maintenance of a declaratory judgment proceeding, that the petition shows that the order of The Board of Public Works was adopted pursuant to and in conformity with the authority vested in the board by valid statute, Section 35, Article 5, Chapter 5, Code, 1931, as amended, and that the acts of the State Board of School Finance were valid and complied with the order of The Board of Public Works.

By order entered February 21, 1959, the circuit court overruled in part and sustained in part the demurrer of the defendants and on its own motion on March 20, 1959, certified to this Court these questions:

(1) Whether there is a justicible controversy between the parties which enables the court to acquire jurisdiction under the declaratory judgment statute;

(2) Whether The Board of Public Works under Section 35, Article 5, Chapter 5, Code, 1931, as amended, may reduce by five per cent all appropriations from general revenue including expenditures from the appropriation of state aid for schools to supplement the general school fund; and

(3) Whether the provisions of Section 35, Article 5, Chapter 5, Code, 1931, as amended, are applicable to revenues received from the consumers sales tax and the use tax.

This Court has held that the rights, the status, and the legal relations of parties to a declaratory judgment proceeding depend upon facts which exist at the time the proceeding is commenced and that if no justicible controversy exists between the parties at that time courts have no jurisdiction to entertain such proceeding. *The Town of South Charleston v. The Board of Education of the County of Kanawha*, 132 W. Va. 77, 50 S. E. 2d 880. The purpose of a declaratory judgment proceeding, however, is to anticipate the actual accrual of causes for

equitable relief or rights of action by anticipatory orders which adjudicate real controversies before violation or breach results in loss to one or the other of the persons involved. See *West Virginia-Pittsburgh Coal Company* v. *Strong,* 129 W. Va. 832, 42 S. E. 2d 46; *Crank* v. *McLaughlin,* 125 W. Va. 126, 23 S. E. 2d 56. Future and contingent events, however, will not be considered in a declaratory judgment proceeding and a declaration of rights will not be based on a future contingency. *The Town of South Charleston* v. *The Board of Education of the County of Kanawha,* 132 W. Va. 77, 50 S. E. 2d 880.

In the *Town of South Charleston* case, a declaratory judgment proceeding, the town sought a declaration of the rights and legal relations of the town and the board of education under an agreement between them concerning certain lands in which it was provided that in the event the lands should be conveyed to the United States of America and it should reconvey the lands to the town, the town would execute and deliver to the board a lease of the lands for a term of ninety nine years with provisions for its renewal. In holding that no justicible controversy existed between the parties this Court said: "The agreement between the town and the board clearly is inapplicable and ineffective so long as the lands are not reconveyed to the town or a designated grantee, and the effectiveness of the agreement to lease depends upon whether the United States Government reconveys said lands to the town. That event has not occurred. It may not occur. Hence, the rights of either the town or the board concerning the land depends solely upon a future, contingent event."

*Crank* v. *McLaughlin,* 125 W. Va. 126, 23 S. E. 2d 56, was a declaratory judgment proceeding, in which the petitioners who were engaged in producing and selling milk in the City of Charleston sought a declaration that the action of McLaughlin, Commissioner of Agriculture, in abrogating and annulling certain ordinances of the City of Charleston was illegal and void. The City of Charleston was not an original party to the proceeding

but intervened as a defendant. In reaching the conclusion that there was no justicible controversy between the petitioners and the Commissioner of Agriculture, this Court held that the petitioners did not have a right, status or legal relationship, created by the ordinance annulled by the commissioner, which would serve as a basis for a suit, action or proceeding in which a court of competent jurisdiction would be warranted in granting any relief. The facts of this case render it distinguishable from the *Town of South Charleston* case and the *Crank* case.

An actual controversy susceptible of judicial determination, however, exists when a legal right is claimed by one party and denied by another party to a declaratory judgment proceeding. See *Dolan* v. *Hardman,* 126 W. Va. 480, 29 S. E. 2d 8; *Mainella* v. *The Board of Trustees of Policemen's Pension or Relief Fund of the City of Fairmont,* 126 W. Va. 183, 27 S. E. 2d 486. In *Tharp* v. *Tharp,* 131 W. Va. 529, 48 S. E. 2d 793, this Court held that a person claiming an interest in an estate under a will may have such interest declared and determined in a declaratory judgment proceeding. Title to public office between contesting claimants may be determined in a declaratory judgment proceeding. *Daugherty* v. *Town of Mabscott,* 131 W. Va. 500, 48 S. E. 2d 342. A declaration of the rights of the parties in a controversy between a state officer and a person or a private corporation concerning the duty of the officer may be obtained in a declaratory judgment proceeding. *Douglass* v. *Koontz,* 137 W. Va. 345, 71 S. E. 2d 319. The validity of a directive of the chief of the department of mines providing that no mine foreman, section foreman, or assistant foreman can legally act as a fire boss, and the meaning and the effect of the statutory provision on which such directive is based may be determined in a declaratory judgment proceeding. *Algoma Coal and Coke Company* v. *Alexander,* 136 W. Va. 521, 66 S. E. 2d 201.

Other cases in which this Court has recognized the

existence of a justicible controversy in a declaratory judgment proceeding are *Smith* v. *Smith,* 140 W. Va. 298, 83 S. E. 2d 923, involving the determination of the right between parents of minor children to the custody of such children; *LaFollette* v. *The City of Fairmont,* 138 W. Va. 517, 76 S. E. 2d 572, involving the validity of an act of the Legislature, certain ordinances of the city, and a paving assessment levied against land of the petitioner by the city pursuant to the ordinances; *Conley* v. *Easley,* 136 W. Va. 645, 68 S. E. 2d 23, involving the determination of the rights of conflicting claimants to collect certain accounts receivable; and *Brouzas* v. *The City of Morgantown,* 144 W. Va. 1, 106 S. E. 2d 244, involving the validity of a municipal ordinance.

Section 1, Article 13, Chapter 55, Code, 1931, as amended, provides in part that courts of record within their respective jurisdictions shall have power to declare rights, status and other legal relations whether or not further relief is or could be claimed. Section 2 of the same article and chapter also provides in part that any person whose rights, status or other legal relations are affected by a statute may have determined any question of construction or validity arising, and obtain a declaration of rights, status or other relations, under such statute.

Under the provisions of the foregoing statute and the decisions of this Court a justicible controversy exists between the plaintiffs and the defendants of which the Circuit Court of Kanawha County had jurisdiction in this declaratory judgment proceeding. At the time of the institution of this proceeding no contingency existed concerning the effect of the order of The Board of Public Works. It effected an immediate and unconditional reduction to the extent of five per cent of the amounts originally appropriated and allocated to each of the plaintiffs and deprived them of the use of that percentage for the operation of the schools within each county. If any contingency exists it relates to an increase of revenue sufficient to permit the expenditure of the full amount of the appropriation allocated to each plaintiff and any such

contingency does not alter or affect the conditions created by the order which existed when this proceeding was instituted. The order of The Board of Public Works has in fact disrupted the school program originally adopted by each plaintiff during the fiscal year, has prevented the normal and customary operation of the schools, and has caused each plaintiff to revise and alter its original school program. It has required each plaintiff to shorten its school term, or decrease the salaries of its teachers, or reduce its teaching force and other personnel, or eliminate essential parts of its curriculum and activities. It has also subjected the schools operated by each plaintiff to the possible loss of accreditation and has produced uncertainty and confusion in the administration of the schools under the management and the control of each plaintiff. The petition asserts the legal right of the plaintiffs to obtain and use immediately the full amount of money originally allocated without reduction and challenges the validity of the order requiring the five per cent reduction and the constitutionality of Section 35, Article 5, Chapter 5, Code, 1931, as amended, the statute on which the order is based. The defendants deny the existence and resist the exercise of any such right and assert the validity of the order and the constitutionality of the statute. These conflicting positions of the parties present a question of law for judicial determination. They constitute a justicible controversy in this declaratory judgment proceeding. As the validity of an order of The Board of Public Works reducing the expenditure of funds appropriated and allocated to a county board of education and the constitutionality of the statute upon which such order is based may be determined in a declaratory judgment proceeding, the action of the circuit court in overruling the demurrer on that point was correct and proper.

The second question certified requires consideration and determination of the issue whether Section 35, Article 5, Chapter 5, Code, 1931, as amended, applies to all appropriations of general revenue, including the appropriation to supplement the general school fund, and the issue whether that statute constitutes an unconstitutional dele-

gation of legislative power to the executive department of this State.

Though by Article VI, Section 51 of the Constitution of this State, known as the Budget Amendment, The Board of Public Works is required to prepare and submit to the Legislature a budget for each fiscal year which shall contain a complete plan of expenditure and estimated revenue and shall show the estimated surplus or deficit of revenue at the end of such fiscal year and a bill for all proposed appropriations of the budget clearly itemized and classified, the power to appropriate money from the treasury of this State is by that section and by Article X, Section 3 of the Constitution vested exclusively in the Legislature. *State ex rel. Trent* v. *Sims,* 138 W. Va. 244, 77 S. E. 2d 122. In the exercise of that power the Legislature appropriated from general revenue for state aid to supplement the general school fund during the fiscal year 1959 the sum of $52,005,220.00. Section 1, Title 1, and Section 1, Title 2, Chapter 1, Acts of the Legislature, 1958, Regular Session. That appropriation is a valid appropriation and, having been made from general revenue, is subject to the provisions of Section 35, Article 5, Chapter 5, Code, 1931, as amended. That section, as part of Article 5, Chapter 5, of the Code, was enacted by Chapter 39, Acts of the Legislature, 1939, Regular Session, and contains the provision that if The Board of Public Works "determines that the amounts, or parts thereof, appropriated from the general revenue cannot be expended without creating an overdraft or a deficit in the general fund, it may instruct the director to reduce equally and pro rata all appropriations out of general revenue in such a degree as may be necessary to prevent an overdraft or a deficit in the general fund." The legislative intent in enacting that statutory provision was to prevent a deficit in the State treasury which was the primary purpose of the adoption of Article VI, Section 51, of the Constitution. In order to assure the accomplishment of that result, by the third paragraph of Sub-Section D, Section 51, Article VI of the Constitution, the

Legislature is authorized, from time to time, to enact such laws, not inconsistent with that section, as may be necessary and proper to carry out its provisions. Section 35 is in all respects consistent with the provisions of that section of the Constitution.

In determining the meaning and the effect of Section 35, it should be considered and applied in connection with Sections 34 and 37 of the same article, both of which refer to Section 35. *Vest* v. *Cobb*, 138 W. Va. 660, 76 S. E. 2d 885.

Section 34 provides that the board may reduce appropriations according to any of the methods set forth in Sections 34, 35 and 36.

Section 36 provides that The Board of Public Works may reduce appropriations from funds supported by designated taxes or fees and appropriations from fees or other collections set aside for the support of designated activities or services, and that each fund and fee or collection account shall be treated separately but that appropriations from the same fund or account shall be treated equally and reduced pro rata.

Section 37 provides that if The Board of Public Works determines that the reductions authorized in Sections 34 and 35 will dangerously impair the existence of the essential services of government it may instruct the director of the budget to reduce the amount to be expended from separate appropriations to be divided into five different classes, and that all reductions shall be in multiples of five per cent with a fixed relationship between the classes which shall be measured by a difference of five per cent in the rate of reduction.

Considering these sections of the statute together it is clear that Section 35 applies only to amounts appropriated from general revenue and that the meaning and the effect of that section are that The Board of Public Works, to avoid an overdraft or a deficit in the general revenue fund, may instruct the director of the budget to reduce

the expenditures from appropriations from the general fund, but not the appropriations, to the extent necessary to prevent an overdraft or a deficit in the general fund. To give that section of the statute a meaning and an effect which would authorize the reduction of a legislative appropriation by an official of the executive branch of the government would render doubtful the constitutionality of Section 35 of the statute, notwithstanding the provisions of the third paragraph of Sub-Section D of the Budget Amendment that the Legislature may enact such laws, not inconsistent with that section, as may be necessary and proper to carry out its provisions. The appropriation of public money is an exclusively legislative function but the expenditure of the money appropriated is an administrative function which, except as to money appropriated for the legislature and the judiciary, is to be exercised by the executive department of the government. These two functions are separate and distinct. See *Norton* v. *Lusk*, 248 Ala. 110, 26 So. 2d 849; *State ex rel. Anderson* v. *Fadely*, 180 Kan. 652, 308 P. 2d 537; *In re Opinion of the Justices*, 302 Mass. 607, 19 N. E. 2d 807; *People* v. *Tremaine*, 252 N. Y. 27, 168 N. E. 817; *State ex rel. McCaw* v. *Ferguson*, 139 Ohio St. 1, 38 N. E. 2d 68. In *People* v. *Tremaine*, 252 N. Y. 27, 168 N. E. 817, the court said: "The legislative power appropriates money, and, except as to legislative and judicial appropriations, the administrative or executive power spends the money appropriated." When a statute is susceptible of two constructions, one of which is, and the other of which is not, violative of a constitutional provision, the statute will be given that construction which sustains its constitutionality unless it is plain that the other construction is required. *Walter Butler Building Company* v. *Soto*, 142 W. Va. 616, 97 S. E. 2d 275; *Bennett* v. *Bennett*, 135 W. Va. 3, 62 S. E. 2d 273; *State of West Virginia by C. S. Davis* v. *C. H. Musselman Company*, 134 W. Va. 209, 59 S. E. 2d 472; *Simms* v. *The County Court of Kanawha County*, 134 W. Va. 867, 61 S. E. 2d 849; *Darnall Trucking Company* v. *Simpson*, 122

W. Va. 656, 12 S. E. 2d 516, appeal dismissed, 313 U. S. 549, 61 S. Ct. 1121, 85 L. Ed. 1514; *State* v. *Siers,* 103 W. Va. 34, 136 S. E. 504; *State* v. *Furr,* 101 W. Va. 178, 132 S. E. 504; *Eureka Pipe Line Company* v. *Hallanan,* 87 W. Va. 396, 105 S. E. 506; *Coal and Coke Railway Company* v. *Conley and Avis,* 67 W. Va. 129, 67 S. E. 613; *Ex parte Caldwell,* 61 W. Va. 49, 55 S. E. 910, 10 L.R.A., N. S., 172; *Webb* v. *Ritter,* 60 W. Va. 193, 54 S. E. 484; *Underwood Typewriter Company* v. *Piggott,* 60 W. Va. 532, 55 S. E. 664; *Charleston and Southside Bridge Company* v. *County Court of Kanawha County,* 41 W. Va. 658, 24 S. E. 1002; *State* v. *Workman,* 35 W. Va. 367, 14 S. E. 9, 14 L.R.A. 600; *Hartley* v. *Henretta,* 35 W. Va. 222, 13 S. E. 375; *State* v. *Richards,* 32 W. Va. 348, 9 S. E. 245, 3 L.R.A. 705; *Slack* v. *Jacob,* 8 W. Va. 612, *Osburn* v. *Staley,* 5 W. Va. 85, 13 Am. Rep. 640. The language of Section 35 of the statute does not plainly require that it be given a construction which renders it violative of any constitutional provision.

The principle is also firmly established that any doubt as to the constitutionality of an act of the Legislature will always be resolved in favor of the validity of the statute. *Walter Butler Building Company* v. *Soto,* 142 W. Va. 616, 97 S. E. 2d 275; *State* v. *Harrison,* 130 W. Va. 246, 43 S. E. 2d 214; *State ex rel. Cosner* v. *See,* 129 W. Va. 722, 42 S. E. 2d 31; *State* v. *Furr,* 101 W. Va. 178, 132 S. E. 504; *Ex parte McNeeley,* 36 W. Va. 84, 14 S. E. 436, 15 L.R.A. 226; *Bridges* v. *Shallcross,* 6 W. Va. 562. In passing upon the validity of a statute which is challenged as violative of the Constitution of this State, every reasonable construction will be resorted to by the Court to sustain its constitutionality. *Walter Butler Building Company* v. *Soto,* 142 W. Va. 616, 97 S. E. 2d 275; *State ex rel. Cosner* v. *See,* 129 W. Va. 722, 42 S. E. 2d 31; *West Central Producers Co-Operative Association* v. *Commissioner of Agriculture,* 124 W. Va. 81, 20 S. E. 2d 797; *State* v. *Massie,* 95 W. Va. 233, 120 S. E. 514; *State* v. *England,* 86 W. Va. 508, 103 S. E. 400; *Coal and Coke Railway Company* v. *Conley and Avis,* 67 W. Va.

129, 67 S. E. 613; *Hooper* v. *California,* 155 U. S. 648, 15 S. Ct. 207, 39 L. Ed. 297.

When given its proper meaning and effect, Section 35 does not attempt to authorize The Board of Public Works to instruct the director of the budget to reduce or alter the amount of the appropriation but to limit expenditures from the appropriation to the revenue available for that purpose. Under Section 35, the appropriation remains unaltered and unalterable by any act of the executive branch which is powerless to effect any chance whatsoever in the appropriation, for the power to appropriate public money is a legislative power. See *Norton* v. *Lusk,* 248 Ala. 110, 26 So. 2d 849; *State ex rel. Anderson* v. *Fadely,* 180 Kan. 652, 308 P. 2d 537; *In re Opinion of the Justices,* 302 Mass. 607, 19 N. E. 2d 807; *People* v. *Tremaine,* 252 N. Y. 27, 168 N. E. 817; *State ex rel. Mc-Caw* v. *Ferguson,* 139 Ohio St. 1, 38 N. E. 2d 68; 49 Am. Jur., States, Territories, and Dependencies, Section 36. If the revenue is less than the appropriation only the available revenue may be expended and no overdraft or deficit may be created; but if the revenue is sufficient to satisfy the appropriation in its entirety the available revenue may be expended within the limits of the appropriation for the purpose for which such revenue has been appropriated. It is therefore clear that Section 35, Article 5, Chapter 5, Code, 1931, as amended, is not a delegation of legislative power to the executive department of the government in violation of Article V, Section 1 of the Constitution of this State, is not violative of any constitutional provision, and is in all respects a valid legislative enactment.

To answer the third question certified it is necessary to determine whether the revenue received from the consumer sales tax, under Chapter 108, Acts of the Legislature, 1937, Regular Session, as amended, Article 15, Chapter 11, Michie's West Virginia Code, 1955, Annotated, and the use tax, under Chapter 183, Acts of the Legislature, 1951, Regular Session, Article 15A, Chapter 11, Michie's West Virginia Code, 1955, Annotated, is part

of the general revenue fund or part of the general school fund. If the revenue derived from these taxes is part of the general fund Section 35, Article 5, Chapter 5, Code, 1931, as amended, applies; but if, as held by the circuit court, it is part of the general school fund, Section 35 has no application to such revenue.

Article XII, Section 4 of the Constitution of this State as modified by the Irreducible School Fund Amendment, establishes the general school fund for the support of the free schools of this State. Section 6, Article 9, Chapter 18, Code, 1931, as amended, provides that a separate school fund, to be called the general school fund, shall be set apart for the support of the free schools of the State and that the revenue derived from specified sources and not otherwise appropriated shall be paid into that fund. That section designates as revenue to be placed in such fund the proceeds from the capitation tax; the income of the school funds; the net proceeds of certain fines and forfeitures which have accrued to the State during the previous year; all moneys arising from sources named in Section 4, Article XII of the Constitution; all interest on public moneys received from state depositories; state license tax on marriages; state tax on forfeitures; state tax on state licenses, except on motor vehicles and on owners, chauffeurs, operators and dealers in motor vehicles, hunting and fishing licenses and state licenses paid directly to the state auditor and the secretary of state; and all funds from any source paid into the treasury for school purposes and not otherwise appropriated. Although the present statute imposing the consumer sales tax enacted in 1937 as Chapter 108, Acts of the Legislature, 1937, Regular Session, Article 15, Chapter 11, Michie's West Virginia Code, 1955, Annotated, provides in Section 30 that the proceeds of the tax imposed shall be devoted to the support of the free schools and be expended in such manner as may be provided by law, and although the statute imposing the use tax enacted in 1951 as Chapter 183, Acts of the Legislature, 1951, Regular Session, Article 15A, Chapter 11, Michie's West Virginia Code, 1955, Annotated, likewise provides in Section 26

that the proceeds of the use tax shall be devoted to the support of the free schools and shall be expended in such manner as may be provided by law, it is clear that neither the consumers sales tax nor the use tax is included in the sources of revenue mentioned in Article XII, Section 4 of the Constitution or in Section 6, Article 9, Chapter 18, Code, 1931, as amended.

It appears that the revenue derived from each of these taxes since their creation has been treated by The Board of Public Works and the Legislature as general revenue and as a part of that fund and not as a part of the general school fund and that the revenue derived from these taxes since their inception has been placed in the budgets prepared by The Board of Public Works on which the budget bills enacted by the Legislature have been based for each successive fiscal year. It also appears that the appropriation acts for each fiscal year since the creation of these taxes have made appropriations of the revenue derived from these taxes as appropriations from general revenue.

The provisions of Section 30 and Section 26 of the statutes imposing these taxes, that the proceeds of the tax shall be devoted to the support of the free schools and be expended in such manner as may be provided by law, are mere legislative directions concerning the use to be made of the proceeds of the tax. Those provisions do not require such proceeds to be paid into the general school fund, as do the provisions of Section 6, Article 9, Chapter 18, Code, 1931, as amended, or make such proceeds a part of the general school fund, or constitute an appropriation of such proceeds to the general school fund. The provisions in the statutes imposing the consumers sales tax and the use tax that they should be devoted to the support of the free schools do not restrict or impair the power of any subsequent Legislature to repeal or modify any of such provisions. 49 Am. Jur., States, Territories, and Dependencies, Section 33. Subsequent to the enactment of the statutes which imposed the consumers sales tax and the use tax the Legislature has consistently

treated the revenue derived from them as general revenue and appropriated it as such and has never classified or appropriated it as a part of the general school fund. Excerpts from the budgets prepared by The Board of Public Works for the fiscal years 1954-55 to 1958-59, on which the budget bills enacted by the Legislature for those fiscal years were based, filed as an exhibit with the petition in this proceeding, show that both the consumers sales tax, the original estimate of receipts from which for the fiscal year 1958-59 was $32,325,000.00, and the use tax, the original estimate of the receipts from which for that year was $425,000.00, were placed in the general revenue fund and by Section 1, Title 2, Chapter 1, Acts of the Legislature, 1958, Regular Session, the appropriation of $52,005,220.00 for state aid to supplement the general school fund was made from the general revenue fund. It is clear that the action of the Legislature subsequent to the enactment of the statutes imposing the consumers sales tax and the use tax has repealed or at least modified the provisions of those statutes which direct that the revenue derived from those taxes should be devoted to the support of the free schools and has given recognition and effect to the provisions that the proceeds of these taxes should be expended in such manner as may be provided by law. Since the proceeds of these taxes have not been made a part of the general school fund and have been appropriated for other purposes than the general school fund and, as they have been set out in the budgets prepared by The Board of Public Works, from which the budget bills enacted by the Legislature have been made, as a part of the general revenue fund and have been appropriated as such, the revenue derived from these taxes is a part of the general revenue fund and as such is subject to the provisions of Section 35, Article 5, Chapter 5, Code, 1931, as amended. Moreover, if the proceeds derived from the consumers sales tax and the use tax aggregating approximately thirty million dollars for the fiscal year 1958-59 are not a part of the general revenue fund there is a deficit in that amount in that fund in excess of the appropriations from it and such deficit would

render the budget act for that fiscal year unconstitutional. *State ex rel. Trent* v. *Sims,* 138 W. Va. 244, 77 S. E. 2d 122. There is, however, no deficit of the character indicated because the proceeds derived from the consumers sales tax and the use tax constitute a part of the general revenue fund.

For the reasons stated the rulings of the Circuit Court of Kanawha County are affirmed in part and reversed in part and each of the questions certified is answered in the affirmative except that part of the second certified question relating to reduction of appropriations and that part of that certified question is answered in the negative.

*Rulings affirmed in part
and reversed in part.*