441 S.E.2d 373

STATE of West Virginia ex rel. the BOARD OF EDUCATION OF the COUNTY OF KANAWHA, et al., Petitioners Below, Appellees,

v.

Honorable Gaston CAPERTON, Governor of the State of West Virginia, Respondent Below, Appellant.

No. 21907.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 25, 1994.

Decided Feb. 17, 1994.

Gregory W. Bailey, Gen. Counsel, Kanawha County Schools, William C. Forbes, Pros. Atty. for Kanawha County, William McGinley, Gen. Counsel, West Virginia Educ. Ass'n., and Larry Harless, Charleston, for appellees.

Dawn E. Warfield, Deputy Atty. Gen. and Diana Stout, Sp. Asst. Atty. Gen., Charleston, for appellant.

MILLER, Justice:

Governor Gaston Caperton appeals from an order entered by the Circuit Court of Kanawha County on July 28, 1993, compelling him to restore a 1.5% cut in the public education appropriation for fiscal year 1992–93. Because the challenges raised by the appellee boards of education were not made prior to the end of the pertinent fiscal year coupled with the fact that there is no statutory basis for restoration of appropriations following the expiration of the fiscal year, we reverse the trial court's granting of a writ of mandamus.

On January 4, 1993, Governor Caperton issued Executive Order 1–93 based on a projected budget deficit of $50 million. The executive order required a 1.5% cut in public education expenditures and a 5% cut in all non-educational and non-arts spending. This differential in favor of public education was necessitated, in part, by this Court's recognition in *State ex rel. Board of Education v. Rockefeller*, 167 W.Va. 72, 281 S.E.2d 131 (1981), that public education must be afforded preferred status when cuts are imposed, based on the " 'thorough and efficient' clause [article XII, section 1 of the state constitution] and its related financing provision in Article XII, Section 5 of our Constitution." *Id.* at 75–79, 281 S.E.2d at 133–35.

At the time the executive order was issued, the actual revenue shortfall was $14.2 million and the projected year-end deficit was $50 million. However, due to the unanticipated receipt of an $18 million estate tax payment combined with the implementation of the spending cuts imposed pursuant to the exec-

utive order,[1] the expected revenue shortfall did not occur. At the conclusion of the 1992–93 fiscal year which ended on June 30, 1993, the general revenue fund had a surplus of $21 million. Of these surplus funds, $10 million had already been appropriated by the legislature,[2] leaving a balance of $11 million in unappropriated funds.

Based on the existence of this $11 million surplus, the appellee boards of education, joined by the West Virginia Education Association, the West Virginia Federation of Teachers, and the AFL–CIO, filed a petition for a writ of mandamus on July 16, 1993, in the Circuit Court of Kanawha County, seeking to restore the 1.5% spending reduction imposed on public education for fiscal year 1992–93. On July 28, 1993, the circuit court granted a peremptory writ of mandamus compelling the governor to restore the full 1.5% cut in the public education appropriation for the fiscal year 1992–93 no later than July 30, 1993, at 12:00 p.m. It is from that ruling that the governor seeks relief.

Appellant contends that the primary purpose of the Modern Budget Amendment,[3] found in article VI, section 51 of the state constitution, is the prevention of a deficit or overdraft in the state treasury. In compliance with this objective of preventing deficit spending, the Legislature has authorized the governor to reduce spending when it appears that actual revenues will not meet revenue estimates. *See* W.Va.Code §§ 5A–2–20, –21, –22 (1993) (governor may reduce appropriations pursuant to either pro rata reductions from general revenue or from other designated funds). Pursuant to the discretion conferred upon him by West Virginia Code § 5A–2–21, the governor implemented Executive Order 1–93, choosing to "reduce equally and pro rata all appropriations out of general revenue in such a degree as may be necessary to prevent an overdraft or a deficit in the general fund." W.Va.Code § 5A–2–21.

In syllabus point one of *Rockefeller*, we held that: "The provisions of Article XII, Section 1 *et seq.*, as well as Article X, Section 5 of the West Virginia Constitution, when construed in the light of our prior cases, gives a constitutionally preferred status to public education in this State." 167 W.Va. at 72, 281 S.E.2d at 132. We further held that "[b]ecause of public education's constitutionally preferred status in this State, expenditures for public education cannot be reduced under W.Va.Code, 5A–2–23, in the absence of a compelling factual record to demonstrate the necessity therefor."[4] Syl. Pt. 2, *Rockefeller*, 167 W.Va. at 72, 281 S.E.2d at 132.

In reliance on the constitutionally-preferred status afforded public education funding, Appellees submit that any decision by the governor to reduce expenditures to public education should include a concomitant duty to restore those funds if subsequent circumstances permit a restoration. The governor maintains that he has no authority

1. Because of the appropriation reduction, total expenditures by state agencies were $47 million less than the total amount originally authorized by the Legislature in the budget act for fiscal year 1992–93. This forced reduction, along with the unanticipated receipt of the $18 million estate tax, resulted in a $21 million surplus following the reconciliation of all accounts at the end of the fiscal year.

2. Enrolled Committee Substitute for House Bill 105, enacted in the 1993 regular session of the Legislature, appropriated $10 million of any surplus funds as of July 31, 1993, as follows: $2.1 million to the Soil Preservation Committee, $3 million to the Board of Risk and Insurance Management, $1 million to the Division of Public Transit, and $3.9 million to the Division of Human Services for repayment of the consolidated fund loan.

3. The Modern Budget Amendment, which consists of revisions to article VI, section 51 of the state constitution, was ratified on November 5, 1968. *See* Chapter 15, 1968 Acts of the Legislature.

4. Consistent with the requirements of *Rockefeller*, the record reveals that prior to issuing Executive Order 1–93, the governor first developed the requisite factual basis to support the need for implementing appropriation reductions to public education. 167 W.Va. at 79, 281 S.E.2d at 135 and at syl. pt. 2. That this factual development was made is reflected within the executive order itself, which sets forth both a breakdown of the existing revenue shortfalls and the sources of such revenue deficits as well as the reasons for necessitating the reductions. Moreover, we note that neither Appellees nor the circuit court contended that the governor failed to make the necessary factual basis required by *Rockefeller*. *See id.*

to restore the funds in issue since the appropriation of public money is "an exclusively legislative function."[5] *Board of Educ. v. Board of Pub. Works.* 144 W.Va. 593, 606, 109 S.E.2d 552, 559 (1959). As we recognized in *State ex rel. Department of Employment Security v. Manchin,* 178 W.Va. 509, 361 S.E.2d 474 (1987), "actions that are necessarily implied by a statute, or that must be included in it in order to make its terms effective, are as much a part of the statute as if they had been declared in express terms." *Id.* at 516, 361 S.E.2d at 481. Accordingly, given that the Legislature has reposed in the governor the authority to make necessary budgetary cuts, he therefore possesses the implicit authority to restore such cuts. *See* W.Va.Code §§ 5A-2-20, -21, and -22.[6] However, such restoration must be made before the end of the fiscal year under West Virginia Code § 12-3-12 (1991).

 Since the governor is in a unique position to consider all the facts and circumstances relating to the State's financial solvency, the decision regarding such restoration should remain in his sound discretion. Any such restoration of funds, however, must be made before the end of the relevant fiscal year. Likewise, any challenges to appropriation reductions made by the governor pursuant to the provisions of West Virginia Code §§ 5A-2-20, -21, and -22 must be made prior to the end of the relevant fiscal year under West Virginia Code § 12-3-12 (1991). That provision directs that "[e]very appropriation which is payable out of the general revenue, or so much thereof as may remain undrawn at the end of the year for which made, shall be deemed to have expired at the end of the year for which it is made...." By operation of law then, any appropriations unspent at the end of a fiscal year on June 30th automatically expire pursuant to West Virginia Code § 12-3-12. Although the Appellees

are to be lauded for attempting to regarner funds originally appropriated for public education, because they did not raise the issue until after the 1992–93 fiscal year had expired, the governor was without authority to restore those funds due to their expiration by law. *See* W.Va.Code § 12-3-12. Consequently, the circuit court was in error when it directed the governor to restore the 1.5% reduction in public education funding for fiscal year 1992–93.

Based on the foregoing opinion, the decision of the Circuit Court of Kanawha County is hereby reversed and the case is remanded for entry of an order reflecting the rulings herein.

Reversed and remanded.

---

**5.** The governor sought to join the Legislature in the underlying civil action, but the circuit court concluded that the Legislature was an "unnecessary party" and denied the motion.

**6.** While we recognize that there is no mandatory duty requiring the governor to restore funds to public education in the event of an anticipated but unrealized deficit, there would appear to be a strong mandate to consider such a restoration.

Given the preferential funding status afforded to public education, it would certainly be consistent with the constitutional mandate of providing a "thorough and efficient" school system to, whenever feasible, restore legislative appropriations designated for public education which were reduced to prevent an unrealized deficit budget situation. *See Pauley v. Kelly,* 162 W.Va. 672, 255 S.E.2d 859 (1979).